```
BENJAMIN B. WAGNER
United States Attorney
MICHELLE A. PRINCE
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2758
```

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:11-MJ-310 KJN |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO BAIL MEMORANDUM |
| v. | |
| JAMES WILLIAM ROBERTSON, | DATE: October 3, 2011<br>TIME: 2:00 p.m.<br>COURT: Hon. Kendall J. Newman |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO BAIL**

The fugitive, James William Robertson was arrested on September 30, 2011, pursuant to a complaint and warrant issued by U.S. Magistrate Judge Kendall Newman, seeking the fugitive's extradition to Canada, pursuant to an extradition treaty between Canada and the United States, 27 UST 983, TIAS 8237, (hereinafter, "the Treaty"), and pursuant to 18 U.S.C. 3184 et seq. Judge Kendall Newman signed the warrant for arrest for extradition on September 29, 2011. The fugitive is currently in the custody of

1

the United States Marshals.

Authorities in Canada seek the extradition of James William Robertson to serve a sentence on the following charges: (1) sexual assault, in violation of section 246.1 of the Criminal Code of Canada ("CCC"); (2) two counts of indecent assault of a male person upon another male person, in violation of section 156 of the CCC; (3) two counts of indecent assault upon a female, in violation of section 141(1) of the CCC; (4) three counts of indecent assault upon a female, in violation of section 149(1) of the CCC; (5) rape, in violation of section 136(a) of the CCC; (6) rape, in violation of section 144 of the CCC; (7) common assault, in violation of section 231(1) of the CCC; and (8) common assault, in violation of section 245(1) of the CCC all committed in Sidney, British Columbia between 1966 and 1988. ROBERTSON is also wanted to stand trial on three counts of failing to comply with a long term supervision order contrary to Section 753.3(1) of the CCC. Article 11 of the Treaty provides for the extradition of persons accused or convicted of these crimes. On March 31, 2010, a Warrant of Apprehension and Suspension of Long Term Supervision was issued by the Vancouver Parole Office of the Correctional Service of Canada for this purpose.

The United States, in execution of its treaty responsibilities and acting at the request of the Government of Canada, urges that the fugitive be held without bond pending the hearing on the certification of the extradition pursuant to 18 U.S.C. 3184 et seq. and files this memorandum in support thereof.

## I.     APPLICABLE LAW.

The federal statute governing extradition procedures in the United States pursuant to treaties with other nations, 18 U.S.C. §§ 3184 et seq., does not provide for bail.  Further, an extradition proceeding is not a criminal case.  See Kamrin v. United States, 725 F.2d 1225, 1227-1228 (9th Cir. 1984); Martin v. Warden, Atlanta Penitentiary, 993 F.2d 824, 829 (11th Cir. 1993). Consequently, the Bail Reform Act, Title 18 U.S.C. §§ 3141 et seq., and its criteria governing the allowance and the amount of bail in United States criminal cases do not apply in extradition matters.   The Bail Reform Act applies only to "offenses" against the United States that are triable in United States courts.   See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2).  The fugitive James William Robertson is not charged with an "offense" within the meaning of 18 U.S.C. § 3156.[1]   Instead, Robertson is charged with the following:

(1) sexual assault, in violation of section 246.1 of the Criminal Code of Canada ("CCC"); (2) two counts of indecent assault of a male person upon another male person, in violation of section 156 of the CCC; (3) two counts of indecent assault upon a female, in violation of section 141(1) of the CCC; (4) three counts of indecent assault upon a female, in violation of section 149(1) of the CCC; (5) rape, in violation of section 136(a) of the CCC; (6) rape, in violation of section 144 of the CCC; (7) common assault, in violation of section 231(1) of the CCC; and (8) common assault,

---

[1] The term "offense" for the purposes of Section 3141 is defined in 18 U.S.C. § 3156(a)(2) as "any criminal offense, other than an offense triable by court-martial, military commission. provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress. . ."

3

in violation of section 245(1) of the CCC all committed in Sidney, British Columbia. ROBERTSON is also wanted to stand trial on three counts of failing to comply with a long term supervision order contrary to Section 753.3(1) of the CCC against the Requesting State, Canada. See Matter of Extradition of Rouvier, 839 F. Supp. 537, 539 (N.D. Ill. 1993); Matter of Extradition of Sutton, 898 F. Supp. 691, 694 (E.D. Mo. 1995).[a]

Similarly, neither the Federal Rules of Criminal Procedure or the Federal Rules of Evidence apply to international extradition proceedings.[2] Fed R. Crim. P. 1(a)(5)(A); Fed. R. Evid. 1101 (d)(3); See also, Afanesjev v. Hurlburt, 418 F.3d 1159, 1164-65 (11th Cir. 2005); Melia v. United States, 667 F.2d 300, 302 (2d Cir. 1981); Bovio v. United States, 989 F.2d 255, 259 n.3 (7th Cir. 1993).

### A. A Strong Presumption Against Bail Governs In An International Extradition Proceeding

The overwhelming weight of authority supports the strong presumption against the granting of bail in international extradition cases. Both the United States Supreme Court and the federal courts of appeals have long held that bail should be granted in only the most unusual of circumstances.

In the landmark case Wright v. Henkel, 190 U.S. 40(1903), the Supreme Court affirmed the detention without bail of a fugitive

---

[2] Although the issue before the Court is the fugitive's request for bail, it also should be noted that neither the prohibitions against hearsay, Simmons v. Braun, 627 F.2d 635, 636 (2d Cir. 1980), nor the Sixth Amendment's guarantee to a speedy trial, Jhirad v. Ferrandina, 536 F.2d 478, 485 n. 9 (2d Cir. 1976), cert. denied, 429 U.S. 833 (1976), reh. denied, 429 U.S. 988 (1976), apply to international extradition proceedings.

4

sought by Great Britain for defrauding a corporation of which he was a director. The United States argued in Wright that extradition courts were without power to allow bail because no statute provided for such power. Id. at 55. The Court stated that it was unwilling to hold that the circuit courts do not possess power with respect to admitting fugitives to bail other than as specifically vested by statute, but cautioned that " . . . bail should not ordinarily be granted in cases of foreign extradition . . . ." Id. at 63.

In establishing this presumption against bail, the Supreme Court in Wright explained that when a foreign government makes a proper request under a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment. Id. at 62.

The reasons for this presumption against bail in international extradition cases are clear and compelling. First, it is necessary for the United States to meet its legal treaty obligations. A person sought for extradition already is an international fugitive from justice; it is reasonable to think that person would flee if alerted to the charges. Even if the person were not in flight, the fact of an impending extradition to a

5

foreign country to face serious criminal charges, the outcome of which is uncertain, is itself a strong incentive to flee.

Further, the ability of the United States to deliver fugitives pursuant to extradition requests has significant international law implications. The international legal system depends wholly upon the respect of its members for the obligations into which they freely enter. When, as here, the Government of Canada meets the conditions of the treaty, the United States is obliged to deliver the fugitive. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond. See Wright, 190 U.S. at 62; see also U.S. v. Leitner, 784 F.2d 159, 160-61 (2d Cir. 1986)(the Government has an overriding foreign relations interest in complying with treaty obligations and producing extradited persons).

**B.  The Fugitive Must Establish "Special Circumstances" and Must Not Pose a Risk of Flight for the Court to Consider the Question of Bail**

In light of the strong presumption against bail established in Wright, the federal courts have uniformly held that bail shall not be granted except under "special circumstances." See United States v. Leitner, 784 F.2d at 160 (bail in extradition cases should be granted "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory"), (quoting In re Mitchell, 171 F. 289 (S.D.N.Y. 1909)(Hand, J.);

Salerno v. United States, 878 F.2d 317, 318 (9th Cir. 1989)("only 'special circumstances' will justify bail"); Koskotas v. Roche, 931 F.2d 169, 175 (1st Cir. 1991)("in a case involving foreign extradition, bail should not be granted absent special circumstances"). Moreover, the burden is on the fugitive to establish the existence of special circumstances warranting the granting of bail. See Salerno, 878 F.2d at 317-18; Leitner, 784 F.2d at 160.

Notably, the courts have determined that certain circumstances are not "special" and do not justify the release of a fugitive during extradition proceedings. Foremost, the absence of flight risk is consistently held not to constitute a special circumstance. Rather, the absence of a risk of flight and a finding of special circumstances are each independent requirements for bail in an extradition case. Therefore, to qualify for bail, a fugitive is required to make a two-part showing that: (1) he or she is not a flight risk and (2) that "special circumstances" exist warranting the granting of bail. See e.g., United States v. Ramnath, 533 F. Supp. 2d 662, 665 (E.D. Tex. 2008); In re Extradition of Molnar, 182 F. Supp. 2d 682, 687 (N.D. Ill. 2002); In re Extradition of Nacif-Borge, 829 F.Supp. 1210, 1215 (D. Nev. 1993); In re Extradition of Chapman, 459 F.Supp.2d 1024, 1026-27 (D. Haw. 2006); In re Extradition of Santos, 473 F. Supp. 2d 1030, 1035-36 (C.D. Cal. 2006). The absence of flight risk is consistently held to be a requirement separate from the special circumstances test.

To illustrate, in Leitner, the fugitive was a United

States citizen, who had been arrested in Israel and charged with acts of terrorism against Arabs. Israeli authorities freed Leitner on bail after he agreed to cooperate with them. After receiving death threats, Leitner fled to his home in the United States and lived openly under his own name for a year and a half. He attended law school, drove a taxi under his own name, and lived with or frequently visited his parents. Based upon the foregoing, the Magistrate Judge found that Leitner did not pose a flight risk. The Second Circuit, in affirming the district court's reversal of the grant of bail, held that the lack of flight risk was not a "special circumstance." 784 F.2d at 161. See also, Salerno, 878 F.2d at 318 (flight risk "is not a criteria for release in an extradition case"); Matter of Russell, 805 F.2d 1215, 1216 (5th Cir.)("[b]eing a tolerable bail risk is not in and of itself a special circumstance"); United States v. Williams, 611 F.2d 914, 915 (1st Cir. 1979)("even applicant's arguable acceptability as a tolerable bail risk" is not a special circumstance). Instead, absence of flight risk is an independent and additional condition that must be demonstrated to warrant bail.[3] Similarly, findings regarding danger to a community both here and abroad would preclude bail, even in the face of arguably special circumstances. See In

---

[3] Courts differ in the order in which they consider flight risk and special circumstances. Some courts evaluate potential flight risk before proceeding to any special circumstances analysis. E.g., Extradition of Molnar, 182 F. Supp. 2d at 687; United States v. Taitz, 130 F.R.D., 442, 445 (S.D. Cal. 1190). Other courts first determine special circumstances and then consider the potential for flight. E.g., Extradition of Morales, 906 F. Supp. at 1373; Extradition of Nacif-Borge, 829 F. Supp. at 1216; Extradition of Mainero, 950 F. Supp. 290, 295 (S.D. Cal. 1996). Regardless of the order of consideration, case authority is clear that both special circumstances must be demonstrated and lack of flight risk must be established to grant bail. Practical considerations and judicial economy suggest determinations as to flight risk and danger to the community be made first.

re Extradition of Gonzalez, 52 F.Supp.2d 725, 735 (W.D. La. 1999); Ramnath, 533 F. Supp. 2d at 665; Extradition of Molnar, 182 F. Supp. 2d at 687; Extradition of Nacif-Borge, 829 F.Supp. at 1215; Extradition of Santos, 473 F. Supp. 2d at 1035-36.[4]

Assuming the fugitive is not a risk of flight and poses no danger to the community, the fugitive must make an affirmative showing of special circumstances. Courts have declined to find "special circumstances" based on:  (1) the need to consult with one's attorney and/or participate in pending litigation;(2) the complexity of the pending litigation;(3) health issues including discomfort, dietary needs, or associated health concerns while incarcerated;(4) United States citizenship or pendency of naturalization proceedings;(5) political or professional status;(6) the availability of electronic monitoring; and (7) the fugitive's character, past conduct, and/or ties to the community; (8) ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings;(9)substantial likelihood of success against extradition or action in requesting country; and, (10)

---

[4] In a decision in a U.S. criminal case, the Ninth Circuit rejected the contention that under the Bail Reform Act a court must limit its evaluation of a defendant's potential danger to a geographic location within the United States. United States v. Hir, 517 F.3d 1081, 1088-89 (9th Cir. 2008). Instead, the court held that, if the defendant is charged with a crime punishable under U.S. law, the court may consider the danger posed to a foreign community, reasoning that the effect of the alleged offense occurs abroad. Id. In the international extradition context, where the Bail Reform Act does not apply, there is an even greater justification for extending consideration of the threat that a fugitive might pose to a community beyond the U.S. borders. Requests by other countries for extradition of a fugitive by definition comprise violations of foreign law having a primary adverse effect on the foreign community. If a court, in making its danger to the community determination, were limited to considering only geographic areas located in the United States, the court would be forced to ignore the potential danger a fugitive's release could be in a foreign location where the crime was committed.

9

availability of bail for the same offense in the requesting country.  While in certain exceptional cases some of the above may have been deemed a special circumstance, for the most part, where a court determines special circumstances to exist it is generally based on a confluence of factors, as opposed to any single consideration.  Such findings are very case specific and within the discretion of the court, mindful of the strong presumption against bail and future reciprocity of other countries at stake.

### II. The Fugitive Poses a Risk of Flight and Has Failed to Establish Special Circumstances.

The fugitive in this case has not met his burden and the Court should deny his request for bail.  A fugitive charged with crimes in another country is already by definition in flight or deliberately absent from that jurisdiction.  Here, the strong presumption against bail is supported by the 12 convictions against James William ROBERTSON which are primarily sexual offences that occurred in Sidney, British Columbia, between the years 1966 and 1988. The victims were ROBERTSON's children, step-children, step-grandchild and a friend of his step-child. In March 2010, his parole officer lost contact with him. Contrary to the conditions of his Long-Term Supervision Order ROBERTSON moved from his sister's residence in Richmond, British Columbia without advising his parole officer and had ceased reporting to her.  ROBERTSON was declared a long term offender and this declaration was upheld upon appeal to the British Columbia Court of Appeal (R. v. *J.W.R.* 2010 BCCA 66). ROBERTSON is evading the strict supervision of his conduct

intended by the Court in imposition of the long-term offender designation and poses a risk to commit serious personal injury offences while a fugitive in the United States.

Finally, on September 29, 2011, the South Lake Tahoe Chief of Police became aware that ROBERTSON baby-sat a seven year old girl last week. The girl's mother raised this matter with the local authorities. This alleged behavior by ROBERTSON is inconsistent with one of the conditions of the long term supervision order prohibiting ROBERTSON from having any direct or indirect contact with any person under the age of 18 unless supervised by a responsible adult pre-approved in writing by his parole officer. Here, the fugitive poses a flight risk and a danger to the community. Indeed, the fugitive has demonstrated that he is highly adept at moving himself; concealing his identity; at secreting and accessing financial and other resources in aid of flight. Hence, further flight from the United States to yet another country or to an underground location in the United States is a reasonable assumption. Given the serious nature of the convictions involving the sexual assault of minors, the community both here in the United States and abroad are at risk if the fugitive is released.

Because the fugitive is a risk of flight and a danger to the community, the Court need go no further in order to deny the application for bail. The fugitive has been unable to meet this necessary independent basis to obtain bail and the Court need not even consider any arguments regarding special circumstances.

However, were the Court satisfied that the fugitive is not a flight risk and poses no danger to the community here or

abroad, the fugitive cannot demonstrate to this Court that "special circumstances" exist which would justify bail in this case.  The fugitive has a heavy burden to meet in proving the exceptional circumstances that would vitiate the strong presumption against bail.

Should this fugitive's position be that he is a good bail risk, his argument, is legally insufficient under U.S. case law to justify granting bail in an international extradition proceeding.  Allowance of bail in any amount would not guarantee the fugitive's presence in court and would invite the possibility of embarrassing the United States in the conduct of its foreign affairs.  While forfeiture of bail in domestic criminal cases is designed to compensate, at least in part, the court that is seeking the accused presence for trial, forfeiture of bail in international extradition cases due to the failure of the fugitive to appear would leave the requesting country, Canada, without either remedy or compensation.  Should, however, the Court be inclined to grant bail in this case, counsel for the Government respectfully requests that the Court submit special written findings as to those specific matters that are found to constitute "special circumstances."  Moreover, in order to protect the ability of the United States to meet its treaty obligations to the Government of Canada, counsel requests that the Court notify the parties a reasonable time in advance of any contemplated release order in order that the United States can consider the matter of whether, under the circumstances, to seek a stay pending possible appeal on the bail issue.

### III. Conclusion

In sum, fugitive James William Robertson is a flight risk and a danger to the community. He has not demonstrated that "special circumstances" exist which would justify bond in his case. Finally, the fugitive's release on bail would have negative implications for U.S. foreign policy in cases where the United States seeks extradition of fugitives from Canada. Based on the foregoing, the United States requests that the fugitive's request for bail be denied.

Dated: October 3, 2011          Respectfully submitted,

                                          BENJAMIN B. WAGNER
                                        United States Attorney


By: _____
    MICHELLE A. PRINCE
    Assistant United States Attorney