1  BENJAMIN B. WAGNER
   United States Attorney
2  MICHELLE A. PRINCE
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California  95814
4  Telephone: (916) 554-2758

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10                              )  CASE NO.  2:11 MJ 310 KJN
                                )
11  IN RE: EXTRADITION OF        )
                                )
12  JAMES WILLIAM ROBERTSON,     )
                                )
13           Fugitive.           )
                                )
14                              )
                                )
15  _____)

16

17

18

19   GOVERNMENT'S REPLY BRIEF TO DEFENDANT'S OPPOSITION TO EXTRADITION

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 1

Dual Criminality . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.   Dual Criminality Exists Based on the U.S. Offense
       of Contempt . . . . . . . . . . . . . . . . . . . . . . . 5

    II.  Dual Criminality Also Exists Based on the Sex
       Offender Registration and Notification Act . . . . . . . 8

        A.   The Court Should Liberally Construe the Applicable
           Extradition Treaty in Order to Affect it's
           Purpose . . . . . . . . . . . . . . . . . . . . . 12

        B.   Robertson's Long Term Supervision was Part of
           His Sentence . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

In the Matter of Jan Alf Assarsson,
    635 F.2d 1237 (7th Cir. 1980)) . . . . . . . . . . . . . . . . . 19

4

Bingham v. Bradley,
    241 U.S. 511 (1916) . . . . . . . . . . . . . . . . . . . . . . 18

5

6

In re Chan Kam-Shu,
    477 F.2d 333 (5th Cir. 1973) . . . . . . . . . . . . . . . . . 12

7

Clarey v. Gregg,
    138 F.3d 764 (9th Cir. 1998) . . . . . . . . . . . . . . . . 4, 9

8

9

Cohen v. Benov,
    374 F. Supp. 2d 850(C.D. Cal. 2005) . . . . . . . . . . . . . 7

10

Emami v. U.S. Dist. Court,
    834 F.2d 1444 (9th Cir. 1987) . . . . . . . . . . . . . . . . 4

11

12

Factor v. Laubenheimer,
    290 U.S. 276 (1933) . . . . . . . . . . . . . . . . 4, 5, 13

13

Glucksman v. Henkel,
    221 U.S. 508 (1910) . . . . . . . . . . . . . . . . . . . . 18

14

Green v. United States,
    356 U.S. 165 (1958) . . . . . . . . . . . . . . . . . . . . 6

15

16

Lo Duca v. Untied States,
    93 F.3d 1100 (2d Cir. 1996) . . . . . . . . . . . . . . . . 3

17

Prasoprat v. Benov,
    421 F.3d 1009 (9th Cir. 2005) . . . . . . . . . . . . . . . 3

18

19

In re Russell,
    789 F.2d 801 (9th Cir. 1986) . . . . . . . . . . . . . . 4, 11

20

Shapiro v. Ferrandina,
    478 F.2d 894 (2d Cir. 1973) . . . . . . . . . . . . . . . . 18

21

22

United States ex rel. Bloomfield v. Gengler,
    507 F.2d 925 (2d Cir. 1974) . . . . . . . . . . . . . . . . 18

23

United States ex rel Sakaguchi v. Kaulukukui,
    520 F.2d 726 (9th Cir. 1975) . . . . . . . . . . . . . . . . 13

24

25

United States v. Carpenter,
    91 F.3d 1282 (9th Cir. 1996)) . . . . . . . . . . . . . . . . 6

26

27

28

<u>United States v. Gabay</u>,
    923 F.2d 1536 (11th Cir. 1991) . . . . . . . . . . . . . . . 6

<u>United States v. Lui Kin-Hong</u>,
    110 F.3d 103 (1st Cir. 1997) . . . . . . . . . . . . . . . . 4

<u>United States v. Mallory</u>,
    525 F. Supp. 2d 1316 (S.D. Fla. 2007) . . . . . . . . . . . 6

<u>Valentine v. United States ex rel. Neidecker</u>,
    299 U.S. 5 (1936) . . . . . . . . . . . . . . . . . . . . . 12

<u>Wright v. Henkel</u>,
    190 U.S. 40 (1903) . . . . . . . . . . . . . . . . . . . . . 4

**FEDERAL STATUTES**

18 U.S.C. § 401(3) . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 2250 . . . . . . . . . . . . . . . . . . . . . . . . 9

18 U.S.C. § 3184 . . . . . . . . . . . . . . . . . . . . . 3, 12, 19

18 U.S.C. § 3186 . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. § 16901 . . . . . . . . . . . . . . . . . . . . . . . . 9

42 U.S.C. § 16913 . . . . . . . . . . . . . . . . . . . . . . . . 9

iii

1  BENJAMIN B. WAGNER
   United States Attorney
2  MICHELLE A. PRINCE
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California  95814
4  Telephone: (916) 554-2758

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11                              )  CASE NO.  2:11 MJ 310 KJN
                                )
12  IN RE: EXTRADITION OF        )
                                )  GOVERNMENT'S REPLY BRIEF TO
13  JAMES WILLIAM ROBERTSON,     )  DEFENDANT'S OPPOSITION TO
                                )  EXTRADITION
14         Fugitive.             )
                                )
15                              )
                                )
16 _____ )

17

18                    STATEMENT OF THE CASE

19      James William Robertson, is wanted in Canada to serve a sentence

20  in connection with his sentence for the following charges committed

21  in Sidney, British Columbia between 1966 and 1988: (1) sexual

22  assault, in violation of section 246.1 of the Criminal Code of Canada

23  ("CCC"); (2) two counts of indecent assault of a male person upon

24  another male person, in violation of section 156 of the CCC; (3) two

25  counts of indecent assault upon a female, in violation of section

26  141(1) of the CCC; (4) three counts of indecent assault upon a

27  female, in violation of section 149(1) of the CCC; (5) rape, in

28  violation of section 136(a) of the CCC; (6) rape, in violation of

                              1

section 144 of the CCC; (7) common assault, in violation of section
231(1) of the CCC; and (8) common assault, in violation of section
245(1) of the CCC.   Robertson is also wanted to stand trial on three
counts of failing to comply with a long term supervision order
contrary to section 753.3(1) of the CCC.

The victims of these offenses were Robertson's biological
children, stepchildren, a step-grandchild and a friend of Robertson's
step child.   Robertson raped one victim on countless occasions from
the time she was thirteen years old.   He fondled, groped and
digitally penetrated another victim's vagina on numerous occasions.
He masturbated his sons and performed oral sex on them.   In one
instance, he assaulted one minor in front of his son and encouraged
his son to place his fingers inside his sister's vagina.   One minor
was seven years old when the sexual abuse began.   The sexual abuse
perpetrated by Robertson continued over the course of several years.
On January 20, 2005, after being credited eleven years for time
served while awaiting trial, the Honorable Madam Justice Kirkpatrick,
a Justice of the Supreme Court of British Columbia, in Vancouver
British Columbia, Canada imposed a cumulative sentence of five years
plus a Long-Term Supervision Order (LTSO) for the aforementioned
offenses and ordered Robertson to be supervised upon his release for
a period of ten years by the Correctional Service of Canada. Pursuant
to the terms of his LTSO, Robertson was, amongst other conditions,
required to report to a parole officer as directed, advise his parole
officer of his residential address and thereafter report immediately
any change, and to remain at all times in Canada.

On January 19, 2010, following the expiration of his period of
incarceration, Robertson commenced serving the ten year LTSO imposed

2

as part of the sentence.  In March 2010, his parole officer lost

contact with him.  Contrary to the conditions of his LTSO Robertson

moved from his sister's residence in Richmond, British Columbia,

without advising his parole officer and ceased reporting to her.  On

March 31, 2010, a Warrant of Apprehension and Suspension of Long Term

Supervision was issued by the Vancouver Parole Office of the

Correctional Service of Canada due to Robertson's failure to meet his

required frequency of contact and because his whereabouts were

unknown to the supervising authorities.

**I.**

DUAL CRIMINALITY

In an extradition hearing held pursuant to Title 18, United

States Code, Section 3184, the presiding extradition magistrate

should consider the evidence presented on behalf of the requesting

country, here Canada, and determine whether the legal requirements

for certification, as defined in the applicable extradition treaty,

statutes, and case law, have been established.  If the extradition

magistrate "deems the evidence sufficient to sustain the charge under

the provisions of the proper treaty . . . he *shall* certify the same .

. . to the Secretary of State."  18 U.S.C. § 3184 (emphasis added).

The Secretary of State makes the determination of whether the

fugitive should be extradited to the requesting state.  18 U.S.C. §§

3184, 3186; see, e.g., Prasoprat v. Benov, 421 F.3d 1009, 1012 (9th

Cir. 2005); Lo Duca v. Untied States, 93 F.3d 1100, 1104 (2d Cir.

1996).

Under the U.S.-Canada Extradition Treaty, "[e]xtradition shall

be granted for conduct which constitutes an offense punishable by the

laws of both Contracting Parties by imprisonment or other form of

detention for a term exceeding one year or any greater punishment." Protocol Amending the Extradition Treaty with Canada, U.S.-Can., art. I, Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990).  The Treaty thus defines an extraditable offense in terms of "dual criminality."  Case law is clear that the dual criminality requirement does not require absolute identity of the Canadian and U.S. statutes that make Robertson's conduct here punishable.  Dual criminality is satisfied if "[t]he essential character of the transaction is the same, and made criminal by both statutes." Wright v. Henkel, 190 U.S. 40, 58 (1903); see also Clarey v. Gregg, 138 F.3d 764, 765 (9th Cir. 1998) ("The primary focus of dual criminality has always been on the conduct charged; the elements of the analogous offenses need not be identical."); Emami v. U.S. Dist. Court, 834 F.2d 1444, 1450 (9th Cir. 1987) ("[A]ll the principle of dual criminality requires is that the particular acts alleged constitute a crime in both jurisdictions."); In re Russell, 789 F.2d 801, 803 (9th Cir. 1986) ("[T]o satisfy the 'dual criminality' requirement, . . . [i]t is enough that the conduct involved is criminal in both countries."). In addition, "extradition treaties, unlike criminal statutes, are to be construed liberally in favor of enforcement because they are 'in the interest of justice and friendly international relationships.'" United States v. Lui Kin-Hong, 110 F.3d 103, 110 (1st Cir. 1997) (citing Factor v. Laubenheimer, 290 U.S. 276, 298 (1933)).

As part of Robertson's sentence upon conviction of 12 criminal offenses ranging from common assault to rape, Justice Kirkpatrick of the Supreme Court of British Columbia sentenced him to serve ten (10) years of supervised release, following a period of imprisonment, in accordance with section 753.1 of the Criminal Code of Canada ("CCC").

4

1   Exhibit F ¶ 123.  On January 12, 2010, Robertson signed a "Long Term

2   Supervision Certificate" in the presence of a witness, acknowledging:

3                   I fully understand and accept the conditions of my long
                    term supervision (attached), any special conditions noted
4                   below or attached and any instructions given by my parole
                    supervisor in respect to any condition of my release.  I
5                   understand that if I violate them, my long term supervision
                    may be suspended.  I also understand that failure or
6                   refusal without reasonable excuse to abide by the
                    conditions of the long term supervision order is an offense
7                   under 753.3(1) of the Criminal Code of Canada.

8   Exhibit I.  The conditions of his supervised release were, *inter
    alia*, that he:
9                   - report to his parole supervisor as instructed,
                    - remain at all times in Canada within the territorial
10                  boundaries fixed by his parole supervisor, and
                    - advise his parole supervisor immediately of any change in
11                  his address of residence.  Id.

12       In March 2010, Robertson was found to be in violation of each of

13  the above mentioned conditions of supervised release.  As a result,

14  he was indicted on September 23, 2010, on three (3) counts of

15  violating section 753.3(1) of the CCC.  Canada now seeks Robertson's

16  extradition to stand trial on these three charges, each of which is

17  punishable by up to ten years imprisonment.

18       I.    DUAL CRIMINALITY EXISTS BASED ON THE U.S. OFFENSE OF
               CONTEMPT
19

20       In violating the conditions of his supervised release, Robertson

21  disobeyed the lawful order of the Supreme Court of British Columbia.

22  Robertson's conduct, if committed here in the United States, would

23  constitute a criminal offense, namely contempt of court.  See 18

24  U.S.C. § 401(3) ("A court of the United States shall have power to

25  punish by fine or imprisonment, or both, at its discretion, such

26  contempt of its authority, and none other, as . . . [d]isobedience or

27  resistance to its lawful writ, process, order, rule, decree, or

28  command.")  Contumacious conduct can be punished by imprisonment for

                                      5

any amount of time, including up to life imprisonment, because there is no statutory limit to the sentence that can be imposed.  See id.; see also, e.g., Green v. United States, 356 U.S. 165, 187-89 (1958) (affirming three-year criminal contempt sentence under Section 401 for failing to appear in court after being released on bail), overruled in part on other grounds, Bloom v. State of Illinois, 391 U.S. 194 (1968); United States v. Carpenter, 91 F.3d 1282, 1283 (9th Cir. 1996) ("The criminal contempt statute, 18 U.S.C. § 401(3), grants broad discretion in determining a sentence; it specifies neither minimum nor maximum penalty.") (footnote omitted)) (per curiam), modified in part on other grounds, United States v. Broussard, 611 F.3d 1069 (9th Cir. 2010); United States v. Gabay, 923 F.2d 1536, 1538-39  n.1, 1545 (11th Cir. 1991) (affirming 60-month sentence for criminal contempt in violation of Section 401 for defendant who fled shortly before his criminal trial).  Because Section 401 does not specify a maximum statutory sentence, it is presumed that the maximum sentence is life.  See United States v. Mallory, 525 F. Supp. 2d 1316, 1320-21 (S.D. Fla. 2007) (quoting Carpenter, 91 F.3d at 1284 (noting that "[l]ike criminal contempts, Class A felonies have no statutory maximum sentence, short of life imprisonment or death")).

The facts in Broussard are illustrative.  Like Robertson, Broussard violated the conditions of one of his several terms of supervised release, for which he was held in contempt and sentenced to 18 months' incarceration.  Specifically, following his original conviction, Broussard was placed on supervised release, which he violated.  The court again released Broussard and placed him on a second term of supervised release, on the condition that he reside in

a twenty-four-hour lockdown at a halfway house.  Broussard attempted
to escape on the day he arrived at the halfway house, which resulted
in charges of: (1) assaulting a police officer and (2) contempt of
court, pursuant to Title 18, United States Code, Section 401, for
violating a condition of his supervised release.  Broussard pleaded
guilty to both charges.  The district judge sentenced him to two
concurrent 18-month prison terms for the two convictions, followed by
two concurrent three-year terms of supervised release.  While on this
third period of supervised release, Broussard again violated its
terms.  He pleaded guilty to the violations and the district court
revoked his supervised release, sentencing him to two years in prison
and three years of supervised release.  The only issue on appeal in
Broussard was the propriety of the sentence of two years'
imprisonment imposed by the court following his third round of
supervised release.  The Court of Appeals, however, chronicled the
fact that Broussard had been charged with contempt of court under
Section 401 following his violation of supervised release and pled
guilty.  Had his conduct occurred in the United States Robertson
could likewise be charged with three counts of contempt under Title
18, United States Code, Section 401, for his violations of his
supervised release, with each count punishable by more than one
year's imprisonment, had his conduct occurred in the United States.

   In a recent extradition matter, a fugitive attempted to defeat
extradition by arguing that violation of *pre-trial* release conditions
was not punishable by more than one year's imprisonment.  This
argument was firmly rejected by the Central District of California.
See Cohen v. Benov, 374 F. Supp. 2d 850, 859-60 (C.D. Cal. 2005).
Canada had requested Cohen's extradition to face prosecution for the

7

charges of fraud, failure to appear at a court hearing, and "breach
of recognizance."   Concerning the third charge, Cohen had been
released following his arrest in Canada, and permitted to return to
his residence in Beverly Hills, California, to conduct his business.
Among other conditions, Cohen was required to remain at his known
address, immediately notify Canadian law enforcement of any change in
his California address, and provide Canadian law enforcement with a
written itinerary in advance of leaving California.   After Cohen
twice failed to appear at scheduled court hearings in Canada,
Canadian law enforcement discovered that Cohen was no longer living
at his Beverly Hills address and had in fact left California without
leaving a forwarding address or giving Canadian law enforcement a
written itinerary.   Eventually, Cohen was arrested in the United
States and his extradition to Canada was certified pursuant to Title
18, United States Code, Section 3184.   Later, the district court
considering Cohen's habeas corpus petition following that
certification, found that the Canadian offense of "breach of
recognizance" had a ready federal counterpart in Title 18, United
States Code, Section 3148, which provides that a criminal defendant
in breach of a condition of pretrial release may be prosecuted for
contempt pursuant to Title 18, United States Code, Section 401.   Dual
criminality was therefore established.

      II.   <u>DUAL CRIMINALITY ALSO EXISTS BASED ON THE SEX OFFENDER
           REGISTRATION AND NOTIFICATION ACT</u>

     In addition, as a convicted sex offender, Robertson's failure to
abide by his conditions of supervised release is also analogous to a
failure to abide by the requirements of the Sex Offender Registration
and Notification Act (SORNA), Pub. L. No. 109-248, 120 Stat. 590

1   (2006), codified at 42 U.S.C. § 16901, <u>et. seq</u>.   A failure to

2   register or update registration as required by SORNA is punishable by

3   up to ten years' imprisonment.   18 U.S.C. § 2250.

4        Robertson's conditions of release in Canada required him, *inter*

5   *alia*, to report his whereabouts to his parole supervisor, a measure

6   aimed at protecting the community from further harm of the type he

7   inflicted on his victims.   Similarly, SORNA requires convicted sex

8   offenders like Robertson to report, *inter alia*, their residential and

9   employment addresses so that the public can be protected from sex

10  offenders.   <u>See</u> 42 U.S.C. § 16913 ("A sex offender shall register,

11  and keep the registration current, in each jurisdiction where the

12  offender resides, where the offender is an employee, and where the

13  offender is a student"); <u>see also</u> 42 U.S.C. § 16901 ("In order to

14  protect the public from sex offenders and offenders against children

15  . . . Congress in this Act establishes a comprehensive national

16  system for the registration of those offenders").   Dual criminality

17  is therefore also established on this basis.   <u>See</u> <u>Clarey</u>, 138 F.3d at

18  766 ("When the laws of both the requesting and the requested party

19  appear to be directed to the same basic evil, the statutes are

20  substantially analogous, and can form the basis of dual

21  criminality.") (internal citations omitted).

22       In view of the "extremely serious crimes perpetrated [by

23  Robertson] primarily against his own children, his stepchildren and a

24  step-grandchild," Exhibit F, ¶ 115.   Justice Kirkpatrick found "that

25  the Crown has satisfied the burden of proving that it is likely that

26  in the future [Robertson] will fail to control his sexual impulses

27  and cause pain, injury or other evil to other persons." Exhibit F, ¶

28  116.   On this basis, Robertson could have been designated a

                                    9

"dangerous offender" and sentenced to "an indeterminate period of detention."Exhibit F, ¶ 117.    Justice Kirkpatrick declined to designate Robertson a dangerous offender, however, believing that the threat Robertson posed could be "reduced to an acceptable level so long as [he] is supervised in the community." Exhibit F, ¶ 122.  She concluded that "the long-term offender designation is the only appropriate sentencing alternative to the dangerous offender designation."  Exhibit F, ¶ 122.  The long-term offender designation gave the court the authority to impose conditions of supervision lasting ten years, providing the court some continuing oversight of Robertson's movements and activities, thereby "protect[ing] the public adequately from the threat of harm." Exhibit F, ¶ 117.

Similarly, sex offender registration and notification programs in the United States are intended to "serve a number of important public safety purposes:"

> In their most basic character, the registration aspects of these programs are *systems for tracking sex offenders following their release into the community*.  If a sexually violent crime occurs or a child is molested, information available to law enforcement through the registration program about sex offenders who may have been present in the area may help to identify the perpetrator and solve the crime.  If a particular released sex offender is implicated in such a crime, knowledge of the sex offender's whereabouts through the registration system may help law enforcement in making a prompt apprehension.  The registration program may also have salutary effects in relation to the likelihood of registrants committing more sex offenses.  Registered sex offenders will perceive that the authorities' knowledge of their identities, locations, and past offenses reduces the chances that they can avoid detection and apprehension if they reoffend, and this perception may help to discourage them from engaging in further criminal conduct.

"The National Guidelines for Sex Offender Registration and Notification," Office of Justice Programs (OJP), http://www.ojp.usdoj.gov/smart/pdfs/final_sornaguidelines.pdf at 3

10

(last visited Nov. 29, 2011) (emphasis added).  Information collected by the sex offender registries, and used to track sex offenders in the community include, inter alia: the sex offender's residence, school, temporary lodging, and vehicle information; driver's license or identification card; employer information; internet identifiers; and passport and immigration documents.  OJP, http://www.ojp.usdoj.gov/smart/faqs/faq_requirement.htm (last visited Nov. 29, 2011).

        While SORNA's reporting requirements may be more numerous than Robertson's conditions of supervised release, "to satisfy the 'dual criminality' requirement, each element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States.  It is enough that the conduct involved is criminal in both countries." <u>Russell</u>, 789 F.2d at 803.  In this matter, just as Robertson was required to report his whereabouts to his parole supervisor as a consequence of his various sex offense convictions in Canada, so too would he be required to report his whereabouts had he been convicted in the United States of the same sex offenses.  Robertson's various failures to comply with his reporting requirements constitute criminal offenses in both Canada (as violations of his conditions of supervised release) and the United States (as violations of the registration requirements of SORNA), punishable in both countries by up to ten years' imprisonment.[1]  Thus, the requirement of dual criminality is

_____

        [1] Although Robertson has been charged with failure to comply with section 490.012 of the CCC, Canada's Sex Offender Information Registration Act, his extradition is not being sought for that offense.  The foregoing analysis should not be construed to suggest otherwise.

satisfied in this case.

**II.**

**A.**   THE COURT SHOULD LIBERALLY CONSTRUE THE APPLICABLE EXTRADITION TREATY IN ORDER TO AFFECT ITS PURPOSE.

The defense argues that the Long Term Supervision Order (LTSO) is not a part of the defendant's sentence and therefore Robertson should not be extradited to Canada on this basis.  The defense further argues that the defendant has already served his sentence by completing his period of incarceration.  This analysis is incorrect. The extradition papers provided by Canada pursuant to Article 10 of the Treaty between the United States and Canada, 27 UST 983, TIAS 8237, clearly shows that the LTSO was part of the defendant's sentence.

First, the extradition statute, 18 U.S.C. § 3184, provides for extradition in instances in which a treaty or convention is in force between the requesting state and the United States.  See, e.g., In re Chan Kam-Shu, 477 F.2d 333 (5th Cir. 1973), cert. denied, 414 U.S. 847 (1973).  The declaration from Patricia E. McDonough, an attorney in the Office of the Legal Adviser for the Department of State, attests that there is a treaty in full force and effect between the United States and Canada.

Second, pursuant to 18 U.S.C. § 3184, the judicial officer should liberally construe the applicable extradition treaty in order to affect its purpose.  The purpose being, the surrender of fugitives to the requesting country.  Valentine v. United States ex rel. Neidecker, 299 U.S. 5, 14 (1936); Factor v. Laubenheimer, 290 U.S. 276, 301 (1933); United States ex rel Sakaguchi v. Kaulukukui, 520 F.2d 726, 731 (9th Cir. 1975).  Courts have stated in order to carry

12

1  out a treaty obligation, the treaty "should be construed more
2  liberally than a criminal statute or the technical requirements of
3  criminal procedure," Factor v. Laubenheimer, 290 U.S. 276, 298
4  (1933).  It is Canada's and the government's position that the LTSO
5  was part of Robertson's sentence handed down by the Honorable Madam
6  Justice Kirkpatrick.

7      **B.**    ROBERTSON'S LONG TERM SUPERVISION WAS PART OF HIS SENTENCE

8      Robertson, is a sex offender who has already been convicted of
9  multiple counts of rape and sexual assault.  The court in British
10 Columbia, Canada, found Robertson to be a long term offender who was
11 ordered to be placed on long term supervision after his release from
12 prison. Exhibit F.   This order was part of his sentence.

13     First it is important to review the complete sentencing analysis
14 conducted by the Honorable Madam Justice Kirkpatrick.  Although the
15 court found that the Crown Prosecution satisfied the requirement that
16 Robertson was a dangerous offender under section 753(1) (a) (I) and
17 section 753 (1) (b) of the CCC, the  court retained the discretion to
18 not declare Robertson to be a dangerous offender if a less
19 restrictive sanction would protect the public.  This less restrictive
20 sanction could only be achieved by either a determinate period of
21 detention or a determinate period of detention followed by a
22 long-term supervision order.  If the court did not find this
23 alternative sentencing then the court would have had to have declared
24 Robertson a danger and impose an indeterminate period of detention.
25 Exhibit F, ¶ 117.

26     Canadian Criminal Code section 753.1(1) provides the following:

27     "The court may, on application made under this part following
       the filing of an assessment report under subsection 752.1(2),
28     find an offender to be a long-term offender if it is satisfied

13

that
(a)  It would be appropriate to impose a sentence of imprisonment of two years or more for the offence for which the offender has been convicted;
(b)  there is a substantial risk that the offender will reoffend; and
©    there is a reasonable possibility of eventual control of the risk in the community"

Section 753.1(1) CCC.


Madam Kirkpatrick's Reason for Judgment cites to R. v. Johnson, (2003) 2 S.C.R. 357.  The court in Johnson held that in order for the sentencing sanctions available for long-term offender provisions to reduce the threat associated with an offender who also satisfies the dangerous offender criteria to an acceptable level, the same offender must satisfy both the dangerous offender criteria and the long-term offender criteria.   Evident in Exhibit F, the Reasons for Judgment, the Honorable Judge Kirkpatrick then proceeded to analyze whether Robertson met the criteria of both a dangerous and long term offender.

To establish whether Robertson was a long term offender the court applied the three-pronged test that must be established for a long - term application.  The criteria is as follows:

(I)  it must be appropriate to impose a sentence of imprisonment of two or more years in respect to the predicate offence;

(ii) there must be a substantial risk that the offender will reoffend; and

(iii) there must be a reasonable possibility of eventual control of the risk in the community.

The court stated as to count (1) that the "forced masturbation, digital vaginal penetration causing tearing and burning; and invited

14

1    sexual touching and fondling over the granddaughter's vaginal area

2    are serious offences exhibiting a shocking abuse of trust deserving

3    of a sentence in excess of two years in prison," Exhibit F, ¶ 120.

4    The court also found the second criteria was satisfied because

5    Robertson 's conviction of sexual assault under Count 1 showed that

6    the defendant was likely to cause injury, pain or "other evil" to

7    other persons in the future through similar offenses. Exhibit F, ¶

8    121.

9       However, with regards to the third criteria, risk to the

10   community, the court decided that if there was a reasonable

11   possibility of being able to control the risk to the community, the

12   third criteria would pose the greatest difficulty. The Honorable

13   Judge Kirkpatrick states in its disposition that the risk to the

14   community could be controlled as long as the defendant was

15   supervised. Exhibit F, ¶ 122. Robertson's supervision upon release

16   was a pertinent factor in the court's decision in deciding whether to

17   keep the defendant behind bars indeterminately or grant the long term

18   offender application. The court rationalized, that as long as the

19   defendant was prevented from working in employment; prevented from

20   being in situations in which he would have the opportunity to molest

21   children, and undergoes treatment, this would create a reasonable

22   possibility of being able to control Robertson's risk to the

23   community. Exhibit F, ¶ 122. This however, could only be achieved

24   by placing the defendant on supervision upon his release from

25   incarceration.

26      Of significance Justice Kirkpatrick stated "a determinate

27   sentence alone would not adequately protect the public … I find that

28   JWR has to date served the equivalent of 11 years imprisonment … any

conditions imposed upon his statutory release would not be sufficient to protect society for a sufficiently long period of time. Therefore, the long-term offender designation is the only appropriate sentencing alternative to the dangerous offender designation." Exhibit F, ¶ 122(c).   The court then ordered the defendant to serve three years in prison on Count 1 and pursuant to section 753.1(b) of the CCC ordered Robertson to be supervised in the community for a period of ten years.   The court stated, "Accordingly, pursuant to s. 753.1(a), I sentence JWR to three years imprisonment on Count 1 and, pursuant to s. 759.1(b), order that JWR be supervised in the community for a period of ten years following his release in accordance with s. 753.2 of the Criminal Code and the Corrections and Conditional Release Act, S.C. 1992, c. 20."   Exhibit F. ¶ 123.

    The defendant, having obtained a more favorable ruling by Judge Kirkpatrick, in favor of detention and supervision, wants to now argue that this was not actually part of his sentence.   This argument is transparent and flies in the face of the court's rational and disposition in reaching its recommendation.

    Second, the extradition papers show that the Appellate Court findings submitted before that court state that "the trial judge found the appellant to be a long-term offender under s. 753.1 of the CCC.   The trial judge imposed a sentence of three years on count 1, to be followed by ten years' supervision in the community.   On the other counts, she imposed a combination of concurrent and consecutive sentences, with the total period of incarceration on all counts coming to 5 years after taking into account double credit for pre-trial time in custody."   It is evident that the Appellate Court found Robertson's LTSO to be part of his sentence.   Exhibit H, ¶ 11

16

Third, section 753.1 on its face indicates that a "sentence for a long-term offender" includes a both a term of imprisonment and an order of supervision:

"Sentence for long-term offender

(3) If the Court finds an offender to be a long-term offender, it shall
(a) impose a sentence for the offence for which the offender has been convicted, which must be a minimum punishment of imprisonment for a term of two years; and
(b) order that the offender be subject to long-term supervision for a period that does not exceed 10 years." Exhibit D.

Fourth, the affidavit from the Crown prosecutor, Catherine Anne Murray, dated September 28th, 2011, confirms the same – that a sentence for an LTO includes a term of detention and supervision. The Crown Prosecution states "An LTO pursuant to section 753.1 of CCC, is an extraordinary sentence, that is imposed only when the court, after finding the offender guilty of a designated sexual offence, is satisfied that there is a substantial risk that the offender will reoffend, but is also satisfied that there is a reasonable possibility of eventual control of the risk in the community…if the offender is found to be an LTO, the court imposes a fixed sentence of two or more years and orders that the offender be supervised in the community ..." Crown prosecutor's Affidavit, ¶ 6. Therefore, the long term supervision formed part of one sentencing transaction.

Despite the clear findings of the trial and appellate court, as well as statutory structure, the defense maintains that the LTSO was not part of Robertson's sentence. Per the defense, the appellate court stated that the long term supervision was not intended to be "penal" in nature. This argument should be rejected simply because

17

the Appellate court refers to Robertson's supervision as not
intending to be "penal" does not mean however that this was not part
of one sentencing transaction.  The defense has taken this statement
out of context because it clear from the court's reasoning that it
did not intend to address the concept of what constitutes a sentence.
The defense's argument restricts the scope of the meaning of the word
"sentence" to "sentences of imprisonment" only.  This is a technical
argument which the court should reject because the meaning of the
word "sentence" as it appears in the treaty is fairly broad.  Court's
have rejected defenses against extradition that "savor of
technicality," as they are inappropriate in dealings with foreign
nations.  For example, a variance between the charges pending in the
foreign state and the complaint filed on behalf of that state in our
federal courts is not a defense to surrender.  Glucksman v. Henkel,
221 U.S. 508, 513-514 (1910); accord Bingham v. Bradley,  241 U.S.
511, 517 (1916); United States ex rel. Bloomfield v. Gengler, 507
F.2d 925, 927-1024 (2d Cir. 1974);  Shapiro v. Ferrandina, 478 F.2d
894, 904 (2d Cir. 1973), cert. dismissed, 414 U.S. 884 (1973).

Here, the appellate court clearly takes the position that the
LTSO is part of the defendant's sentence by the language and argument
that is used in the disposition in paragraph 46: "On this appeal, the
appellant sought to tender evidence of his progress since he was
sentenced.  In my view, it would not be appropriate for this court to
consider that evidence on this appeal. The question for this Court is
whether the sentence imposed was an appropriate one, not whether
subsequent progress justifies a modification of the community
supervision provisions of it.  The long-term offender regime
contemplates, in s. 753.2(3), an application to the Supreme Court by

18

1   the offender where he can demonstrate that he no longer poses a

2   danger to the community.  In my view, that is the preferable forum

3   for the appellant's new evidence to be canvassed.  Exhibit H ¶ 46.

4       Finally, courts have held that extradition necessitates "a

5   narrow scope of review that is based on respect for sovereignty of

6   other nations.  While our courts should guarantee that all persons on

7   our soil receive due process under our laws, that power does not

8   extend to overseeing the criminal justice system of other countries."

9   In the Matter of Jan Alf Assarsson, 635 F.2d 1237 (7th Cir. 1980).

10  Therefore judicial power to require due process does not extend to

11  overseeing the criminal justice system of other countries.  U.S.C.A.

12  Const. Amends. 5, 14; 18 U.S.C.A. § 3184.  However, the attached

13  affidavit from the Crown Prosecutor Catherine Anne Murray, dated

14  November 29, 2011, should address any remaining concerns the court

15  may have as to whether under Canada law the LTSO was part of the

16  defendant's sentence. The affidavit reemphasizes that the LTSO was

17  part of the defendant's sentence and that the period of incarceration

18  and supervision was part of one sentencing transaction.

19                              CONCLUSION

20      For the reasons stated above, the government respectfully

21  requests that the court grants the extradition request submitted by

22  the United States on behalf of Canada, pursuant to the extradition

23  treaty in force between the United States and Canada.

24                          BENJAMIN B. WAGNER
                            United States Attorney
25

26

27  Date: November 30, 2011      /s/ Michelle A. Prince
                            By: MICHELLE A. PRINCE
28                              Assistant United States Attorney

                                19

1

2   Date: November 30, 2011          /s/ Frances Chang
                               By:  FRANCES CHANG
3                                    OFFICE OF INTERNATIONAL AFFAIRS
                                     UNITED STATES DEPARTMENT OF JUSTICE
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20