```
DANIEL J. BRODERICK
Federal Defender
RACHELLE BARBOUR, BAR # 185395
Research and Writing Attorney
801 I Street, 3rd Floor
Sacramento, California 95814
Telephone: (916) 498-5700

Attorney for JAMES WILLIAM ROBERTSON
```

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In Re Extradition of<br><br>JAMES WILLIAM ROBERTSON. | CASE NO. Mag. No. 11-310-KJN<br><br>MR. ROBERTSON'S REPLY BRIEF IN OPPOSITION TO EXTRADITION<br><br>Date:  December 9, 2011<br>Time:  1:30 p.m.<br>Judge: Dale A. Drozd |

I.   INTRODUCTION

On December 9, 2011, this Court will consider whether Mr. Robertson must be extradited to Canada. The government has articulated three theories supporting extradition under the applicable treaty: (1) that Mr. Robertson's Canadian charges – for violating the terms of his long-term supervision order – equate to the federal crime of contempt of court under the dual-criminality requirement; (2) that those same Canadian charges equate to the federal crime of failing to register as a sex offender; and (3) that Mr. Robertson's "Long Term Supervision Order" (LTSO) is a "sentence" that he can be extradited to finish serving. None of these theories support extradition under the

Reply Brief –
Robertson                    1

treaty, and therefore extradition must be denied and Mr. Robertson must be released.

II. MR. ROBERTSON'S PENDING CANADIAN CHARGES ARE NOT SUBSTANTIALLY ANALOGOUS TO THE U.S. CHARGE OF CONTEMPT OF COURT

The treaty's "dual criminality" provision requires that the "essential character" of the acts criminalized by the laws of each country be the same, and that the laws be "substantially analogous." Wright v. Henkel, 190 U.S. 40, 58 (1903); Theron v. United States Marshal, 832 F.2d 492 (9th Cir. 1987). The government acknowledges this and offers only two crimes as possible analogues: contempt of court (18 U.S.C. § 401(3)) and failure to register under the federal Sex Offender Registration and Notification Act (18 U.S.C. § 2250). The government must show that either of these crimes is analogous to Mr. Robertson's charges under Canadian Criminal Code section 753.3(1). See Extradition Packet Exh. A.

    A. IN THE UNITED STATES, A SUPERVISED RELEASE VIOLATOR MAY NOT BE PROSECUTED FOR CONTEMPT UNDER 18 U.S.C. § 401(3) AND THEREFORE THAT STATUTE IS NOT SUBSTANTIALLY ANALOGOUS TO MR. ROBERTSON'S PENDING CHARGES

The government assumes without analysis that a person who violates a condition of supervised release in the United States may be prosecuted for criminal contempt under 18 U.S.C. § 401(3). Without conceding that long-term supervision and supervised release are analogous for this purpose, it is very clear that a U.S. violation of supervised release cannot be prosecuted under 18 U.S.C. § 401(3).

"18 U.S.C. § 3583, which sets forth the sanctions a court may impose if a defendant violates a condition of a supervised

release, does not authorize the Government to prosecute a person with contempt for violating a supervised release." <u>United States v. Bronson</u>, 2007 U.S. Dist. LEXIS 62210 at *15, No. 05-CR-714 (E.D.N.Y. 2007).  When 18 U.S.C. § 3583 was originally enacted in 1984, it explicitly authorized a court to punish a violation of supervised release as contempt of court under 18 U.S.C. § 401(3). <u>See</u> <u>Gozlon-Perez v. United States</u>, 498 U.S. 395, 401 (1991). However, Congress amended section 3583 in 1988 to eliminate the specific provision authorizing contempt of court as a sanction for violating supervised release.  <u>See</u> 134 Cong. Rec. H11108-01 § 7108 (explaining that 102 Stat. 4181 § 7108(b)(3) "amends 18 U.S.C. § 3583(e) by striking out paragraph (3), which provides that the court can treat a violation of a condition of a supervised release as a contempt of court under 18 U.S.C. § 401(3)").

When Congress amends a statute, it must intend for "its amendment to have a real and substantial effect." <u>Stone v. INS</u>, 514 U.S. 386, 397 (1995).  The only explanation for why Congress would strike the specific paragraph authorizing contempt of court as a sanction for violating supervised release is that it intended to prohibit such a sanction.  <u>See</u> <u>Bronson</u>, 1007 U.S. Dist. LEXIS 62210, at *15-16; <u>compare</u> 18 U.S.C. § 3148 (prosecution for contempt expressly set forth as sanction for violation of pretrial release); <u>see also</u> <u>Cohen v. Benov</u>, 374 F.Supp.2d 850 (C.D. Cal. 2005)(noting express provision for contempt prosecution in 18 U.S.C. § 3148 for pretrial violation).

A "specific provision controls over one of more general

Reply Brief – Robertson    3

application." Gozlon-Perez, 498 U.S. at 407. By striking the specific provision authorizing contempt prosecutions, Congress indicated that it intended violations of supervised release to be addressed through the other options set forth in section 3583. As the district court held in Bronson, "Because § 3583 does not authorize contempt of court as a sanction for violation of a condition of supervised release, [a defendant] could not be charged with contempt for such a violation." Id., at *18.

Turning back to the dual-criminality requirement, at a minimum this Court must find that a violation of post-conviction supervision could be prosecuted as contempt in the United States. The statutory history of section 3583 makes it clear that violation of supervised release is not prosecutable as contempt under 18 U.S.C. § 401(3).[1] It is only sanctionable through a violation proceeding. Accordingly, dual-criminality has not been established on this ground.

> B.  THE TERMS OF LONG-TERM SUPERVISION THAT MR. ROBERTSON ALLEGEDLY VIOLATED WERE NOT IMPOSED BY A COURT, AND ACCORDINGLY HE COULD NOT BE PROSECUTED FOR CONTEMPT IN THE U.S.

The government's argument regarding 18 U.S.C. § 401(3) also assumes that the Canadian court imposed the conditions that Mr. Robertson is charged with violating. Section 401(3) requires that the defendant violate a court order. The court documents in

---

[1] The government cites only one case to support its argument that the contempt statute could be used to address the violation of a court-ordered term of supervised release. United States v. Broussard, 611 F.3d 1069 (9th Cir. 2010). That case merely notes that defendant Broussard previously pled guilty to contempt for violating a court order that he be in 24-hour lock down at a halfway house. Id., at 1070. As the government correctly notes, an appellate case is not authority for an issue not raised or decided therein. Govt. Reply at 7; see Malloy v. New York Life Ins. Co., 103 F.2d 439, 448 (1st Cir. N.H. 1939).

Reply Brief –
Robertson                    4

the extradition packet, Canadian statutory authority, and caselaw make it clear that this is not the case. Accordingly, the violation of terms of long-term supervision cannot be prosecuted as contempt of court.

While a judge finds a person to be a long-term offender and imposes the order that he or she be supervised for a determinate period, it is the National Parole Board that imposes the specific conditions "that it considers reasonable and necessary in order to protect society and to facilitate the successful reintegration into society of the offender." Canadian Corrections and Conditional Release Act [CCCRA], § 134.1(2) (Titled, "Conditions for long-term supervision").[2] The National Parole Board is an "administrative body," not a court. Mcmurray v. National Parole Board, 2004 FC 462, para. 2 (Fed. Ct. Canada 2004) available at http://canlii.ca/t/1gtjf.[3]

The person is also subject to standard conditions set forth in section 161 of the CCCRA. Further, the person "shall comply with any instructions given by a member of the Board or a person designated, by name or by position, by the Chairperson of the

---

[2] Canadian statutes and regulations are publically available at the website of the Department of Justice of Canada, http://laws-lois.justice.gc.ca/eng/.

[3] The Canadian legal system is analogous to the U.S. one. The Canadian Supreme Court hears appeals from the Federal Court of Appeal and the provincial court systems. The Federal Court of Appeal is the head of the federal court system. The provincial courts of appeal head the provincial court systems. The trial level courts are the Federal Court and the provincial and territorial superior courts of general jurisdiction. At the bottom of the hierarchy are provincial courts, which are generally divided by subject matter. See Supreme Court of Canada, The Canadian Judicial System available at http://www.scc.csc.gc.ca/court-cour/sys/index-eng.asp.
Canadian case law is available online at the website of the Canadian Legal Information Institute, which provides a citeable link for each authority. These links are included in the body of this brief.

Reply Brief –
Robertson                        5

1 Board or by the Commission, or given by the offender's parole
2 supervisor, respecting any conditions of long-term supervision in
3 order to prevent a breach or any condition or to protect
4 society." CCCRA § 134.2(1).

5 Notably, the entire process of "suspension, termination,
6 revocation and inoperativeness of . . . long-term supervision" is
7 an administrative one. CCCRA § 135 et seq. This is why Mr.
8 Robertson's warrant for breach of his long-term supervision was
9 issued by the National Parole Board. Extradition Packet Exh. C.

10 The long-term supervision statute narrows the court's role
11 to two issues: whether the offender is a long-term offender and
12 how long he or she shall serve on long-term supervision.
13 Canadian Criminal Code [CCC] § 753.1. This is what the trial
14 court in Canada did at paragraph 123 of Exhibit F in the
15 extradition packet. The court did not set the terms of
16 supervision anywhere in its lengthy sentencing order. Having
17 found Mr. Robertson a long-term offender and imposed an order
18 under CCC § 753.1(b), the court's job was done. At that point,
19 Mr. Robertson would "be supervised in the community in accordance
20 with the Corrections and Conditional Release Act" when he
21 finished serving his sentence. CCC § 753.2(1).

22 Mr. Robertson's Long-Term Supervision Certificate sets forth
23 his conditions of release, stating that they are the conditions
24 "that the *National Parole Board is deemed to have imposed* in
25 respect of any offender released on long term supervision."
26 Extradition Packet Exh. I. (Emphasis added.) Likewise, three
27 "special conditions" are included in the certificate, which is

produced by the Correctional Service Canada and "is the property of the National Parole Board and must be delivered on demand of the National Parole Board or of [the offender's] parole supervisor." Id.

Mr. Robertson is charged with three violations of long-term supervision by violating three specific conditions imposed by the National Parole Board and its designees, not by the court. Extradition Packet Exh. A.  Count 1 states that Mr. Robertson failed to "remain at all times in Canada within the territorial boundaries fixed by [his] parole supervisor. . . ." Id.  Count 2 states that Mr. Robertson failed to "advise [his] parole supervisor of . . . any change in [his] address of residence. . . ." Id.  And Count 3 states that Mr. Robertson did fail to "on release . . . report to [his] parole supervisor immediately and thereafter as instructed by [his] parole supervisor. . . ." Id.  As discussed below, Mr. Robertson is not charged with violating the terms of his long-term supervision by failing to register as a sex offender.

It is the Board, not a court, that determines whether "a breach has occurred" and whether an "appropriate program of supervision can be established that would adequately protect society from the risk of the offender reoffending," and that recommends prosecution to the Attorney General under section 753.3 of the Criminal Code.  CCCRA § 135.1(6)&(7).

All of this means that violation of a long-term supervision in Canada may be addressed in two ways – as an administrative matter or as a new offense – but that it does not amount to

Reply Brief –
Robertson                        7

contempt of court because the alleged breach does not constitute failure to comply with a court order.  The distinction between the violation of conditions imposed by a court and conditions imposed by an administrative body is an important one.  Even in Broussard, 611 F.3d 1069, the defendant actually violated a court order, because it was the court that explicitly ordered him to the halfway house.  Contempt requires that a person disobey or resist the court's "lawful writ, process, order, rule, decree, or command."  18 U.S.C. § 401(3).  One may be found in criminal contempt "only if the order is clear and definite, and the contemnor has knowledge of it." United States v. Thoreen, 653 F.2d 1332, 1339 (9th Cir. 1981).

Mr. Robertson did not violate conditions set forth by the Canadian court, he is alleged to have violated conditions set forth by the National Parole Board and his parole supervisor.  This cannot and would not support a prosecution for contempt under federal law.  Again, Mr. Robertson cannot be extradited on this ground.

III. THE CANADIAN CHARGE OF VIOLATING LONG-TERM SUPERVISION IS NOT ANALOGOUS TO THE U.S. FEDERAL CHARGE OF "FAILURE TO REGISTER"

The government argues that "Mr. Robertson's failure to abide by his conditions of supervised release is also analogous to a failure to abide by the requirements of [SORNA]."  Of course, Mr. Robertson is not on "supervised release" but on "long-term supervision," a very different statutory regime.  In any case, neither the criminal charge of breaching a term of long-term supervision, nor the actual acts Mr. Robertson is accused of are similar or analogous to a SORNA violation

First, the government in Canada has already charged Mr. Robertson with a failure to register, but concedes that failure to register cannot be the basis for extradition because it is a "summary conviction offense," not an indictable offense carrying more than a year of custody. See Extradition Packet, Murray Affidavit para. 22.  The "substantially analogous" crime to 18 U.S.C. § 2250 under Canadian law is failing to register as a sex offender under CCC section 490.012, not breaching long-term supervision.[4]  The offenses are simply not the same and do not address the same conduct.

Second, the criminal charges for which Canada seeks to extradite Mr. Robertson have nothing to do legally with any sex offender registration requirements.  Importantly, the long-term supervision that he is accused of breaching did not contain a requirement that he register as a sex offender. See Extradition Packet Exh. I.  Rather, the registration requirement was imposed by the Canadian sentencing judge as a completely separate order from the long-term supervision.  Extradition Packet Exh. F, para. 146.

Third, Mr. Robertson is not charged with violating his long-term supervision by failing to register.  None of the charges

---

[4] Not only does the Canadian government concede that failure to register is not an extraditable offense, but Ms. Murray misstates facts in her sworn affidavit submitted in support of extradition.  Ms. Murray states, "Robertson has never reported to a sex offender registration centre. . . ." Affidavit, para. 21.  This is absolutely untrue.  As detailed in Exhibit 1, which was obtained from the British Columbia National Sex Offender Registry, Mr. Robertson has registered as a sex offender at least 5 times in Canada, including as recently as January 28, 2010.  The outstanding charge is only for failure to register from December 2010 to January 2011, when the government argues Mr. Robertson was already in the United States.  Exh. K.  This conduct is alleged to have occurred ten months after the alleged violation of long-term supervision.

Reply Brief –
Robertson                                9

allege that Mr. Robertson failed to register in Canada. Importantly, by the time those charges were filed, Mr. Robertson had not failed to register. He had just registered on January 28, 2010 (Exh. 1), and was not required to register again until 11 months to a year after this prior registration. Sex Offender Information Registration Act [SOIRA] § 4.1(a)(c); Extradition Packet Exh. K (alleging failure to register December 27, 2010 to January 29, 2011). In fact, "A sex offender who is outside Canada when they are required to report under section 4.1 shall report not later than seven days after they return to Canada."[5] SOIRA § 4.3(1). Further, the judge's registration order for Mr. Robertson specifically stated, "If you will be away from your main or secondary residence for more than 15 consecutive days, *but still within the country*, you must provide every address at which you intend to stay and your departure and return dates." Extradition Packet, Exh. F, para. 146. The essential character of the charged Canadian offenses is not a failure to register, and it does not appear that Mr. Robertson had failed to register at that time.

Fourth, long-term supervision is not only imposed on sex offenders. CCC § 753.1; see e.g. R. v. Bowman, 2004 BCPC 297 (B.C. Prov. Court 2004) available at http://canlii.ca/t/1hq7b (long term supervision for bank robbery). The conditions that Mr. Robertson is accused of violating have nothing to do with

---

[5] Canadian law requires only that a person report initially before leaving the country: "A sex offender shall not leave Canada before they report under this section." Sex Offender Information Registration Act [SOIRA] § 4. Mr. Robertson did report initially and for years thereafter as he completed parole and statutory release. Exh. 1.

Reply Brief –
Robertson                              10

being a sex offender.  The alleged violation of general conditions of long-term supervision without any allegation of a failure to register cannot be considered analogous to the U.S. crime of failure to register.

The government cannot analogize one statute in Canada to a very different statute in the United States merely because both have generalized concerns with "protecting the public."  Every criminal statute is concerned with protecting the public: this cannot be sufficient to allow extradition under the dual-criminality doctrine.  Statutes must be "aimed at the same category of conduct."  <u>Clarey v. Gregg</u>, 138 F.3d 764, 765 (9th Cir. 1998) (Mexican and U.S. homicide laws were directed to the "same basic evil").

A failure to comply with long-term supervision in Canada is simply not analogous to a violation of SORNA in the U.S.  Were the government seeking extradition on the Canadian charge of failure to register, it could certainly argue that the statutes are substantially analogous and share an "essential character" despite different technical requirements (such as registration deadlines and information required to be submitted), or elements (such as the interstate travel requirement of § 2250).  In this case, however, nothing helps the government out: the Canadian statute has nothing to do with failure to register, the charges have nothing to do with failure to register, and the factual allegations in the Canadian case have nothing to do with failure to register.  The pending charges cannot be analogized to 18 U.S.C. § 2250.  Extradition must be denied on this ground.

Reply Brief –
Robertson                           11

## IV. MR. ROBERTSON'S LONG TERM SUPERVISION ORDER IS NOT A SENTENCE UNDER CANADIAN LAW, AND THEREFORE CANNOT SERVE AS THE BASIS OF EXTRADITION

"Long-term supervision does not form part of the offender's sentence." Mcmurray v. National Parole Board, 2004 FC 462, para. 25 (Fed. Ct. of Canada 2004) available at http://canlii.ca/t/1gtjf. The government relies on self-serving, conclusory statements by the Canadian prosecutor as the only basis to support its argument that long-term supervision is a "sentence" under the terms of the treaty. Canadian statutes and caselaw, including definitive interpretation by the Canadian Supreme Court, hold otherwise. Mr. Robertson cannot be extradited to serve out his term of long-term supervision because it is not a sentence.

In 2008, the Canada Supreme Court considered "the relationship between sentencing and the procedure for finding an offender to be a long-term offender." R. v. L.M., 2008 SCC 31, para. 38 (Sup. Ct. Canada 2008) available at http://canlii.ca/t/1x21j. The Supreme Court held that "a distinction must be made between sentencing *per se* and the procedure for imposing a period of post-sentence supervision." Id. (italics in original). It held that the only extent to which a long-term offender finding forms part of the sentencing process is that the "sentencing judge is the same judge who would make the order so finding. However, the similarities between that finding and a sentencing proceeding end there." Id., at para. 45. The Supreme Court then contrasted sentencing and long-term supervision at length and cautioned judges to "remain faithful to

the distinction between sentencing and the imposition of a supervision period.  A judge who confuses these two processes risks straying from the normative principles and the objectives of sentencing." Id., at para. 49.

Canadian law makes it clear that long term supervision only commences after the expiration of a sentence for an underlying offense.  For example, Canadian Criminal Code section 753.2(1) states, "[A]n offender who is subject to long-term supervision shall be supervised in the community in accordance with the Corrections and Condition Release Act when the offender has *finished serving* (a) the sentence for the offense for which the offender has been convicted; and (b) all other sentences for offences for which the offender is convicted and for which sentence of a term of imprisonment is imposed on the offender, either before or after the conviction for the offence referred to in paragraph (a)."  (Emphasis added.)

The Canadian Corrections and Conditional Release Act defines "sentence" as "a sentence of imprisonment and includes a sentence imposed by a foreign entity on a Canadian offender who has been transferred to Canada under the International Transfer of Offenders Act and a youth sentence imposed under the Youth Criminal Justice Act."  CCCRA § 2(1) (Definitions).  Similarly, the Canada Criminal Code defines "sentence" to include a number of orders, but does not include an order for long-term supervision under CCC 753.1(3)(b).[6]  CCC § 673 (relating to

---

[6] The Canadian trial court's "Warrant of Committal Upon Conviction" sustains the distinction between a sentence and the long-term supervision order.  Extradition Packet Exh. G.  It sets forth in detail the sentence

Reply Brief –
Robertson                              13

appeals).

In contrast to long-term supervision, there are several types of supervised release that occur *prior* to the expiration of an offender's sentence:

> (1) "'day parole' means the authority granted to an offender by the Board or a provision parole board to be at large *during the offender's sentence* in order to prepare the offender for full parole or statutory release, the conditions of which require the offender to return to a penitentiary, a community-base residential facility or a provincial correctional facility each night, unless otherwise authorized in writing."  CCCRA § 99(1).
> (2) "'full parole' means that authority granted to an offender by the Board or a provincial parole board to be at large *during the offender's sentence*."  Id.
> (3) "'statutory release' means release from imprisonment subject to supervision *before the expiration of an offender's sentence. . . .*"  CCCRA § 99 (Definitions for Part II, "Conditional Release, Detention and Long-Term Supervision")(emphasis added).

Mr. Robertson fully completed his parole and statutory release. See Extradition Packet Exh. J (Robertson was released on Day Parole on March 21, 2006, transferred to Statutory Release on May 21, 2008); Diplomatic Note No. 0235 (Robertson completed his five year sentence on Jan. 19, 2010, the date long-term supervision began). "Long-term supervision orders begin to run after the warrant expiry of an offender's sentence. . . ." Mcmurry, 2004 FC 462 available at http://canlii.ca/t/1gtjf.

Notably, even within the conditional release section of the CCCRA, long-term supervision is treated in a distinct fashion

---

imposed for each count of conviction, and then "Other" is checked, with the statement, "Long-Term Offender designation made on Count 1, under section 753.1(b) and 753.2 CCC & the Corrections and Conditional Release Act. Offender to be placed on Supervision in the community for a period of 10 years following release." Id.

from parole or statutory release.  <u>Compare</u> CCCRA § 135.1 (LTSO) <u>with</u> § 135 (parole or statutory release).  If the parole or statutory release of an offender "is terminated or revoked, the offender shall be recommitted to custody and *shall serve the portion of the sentence that remained unexpired* on the day on which the parole or statutory release was terminated or revoked." CCCRA § 138(1)(emphasis added).  However, because long-term supervision is not a sentence, the Board has fewer options and the person may not be committed more than 90 days for breach of the condition.  CCCRA § 135.1(2).  Similarly, a person who breaches supervised release may not be charged in Canada for escape, because that only applies "before the expiration of a term of imprisonment to which he was sentenced."  CCC §§ 145(1)(b), 149(2).

   Because of the statutory and regulatory distinctions between a sentence and the imposition of a long-term supervision order, the Canadian Supreme Court held in <u>L.M.</u> that the long-term supervision order is not part of the offender's sentence. Although the Canadian government seeks to extradite Mr. Robertson in part to finish his term of long-term supervision, it cannot under the treaty.  Mr. Robertson completed his sentence for the crimes of conviction.

//
//

Reply Brief – Robertson                                       15

## VI. CONCLUSION

For the foregoing reasons, the Court must deny Canada's attempt to extradite Mr. Robertson and order him released forthwith.

DATED: December 8, 2011          Respectfully submitted,

DANIEL J. BRODERICK
Federal Defender

/s/ Rachelle Barbour
RACHELLE BARBOUR
Research and Writing Attorney
Attorney for Defendant
JAMES WILLIAM ROBERTSON