1  DANIEL J. BRODERICK
   Federal Defender
2  RACHELLE BARBOUR, CAL BAR # 185395
   Research and Writing Attorney
3  801 I Street, 3rd Floor
   Sacramento, California 95814
4  Telephone: (916) 498-5700

5  Attorney for JAMES WILLIAM ROBERTSON

6

7              IN THE UNITED STATES DISTRICT COURT

8           FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11                              )    CASE NO. Mag. No. 11-310-KJN
                                )
12  In Re Extradition of        )    MR. ROBERTSON'S MOTION FOR
                                )    RELEASE
13  JAMES WILLIAM ROBERTSON.     )
                                )    Date:  January 18, 2012
14                              )    Time:  2:00 p.m.
   _____)    Judge: Dale A. Drozd
15

16  I.   INTRODUCTION

17       On December 16, 2011, this Court held an extradition hearing

18  and took the matter under submission.  Mr. Robertson moves for

19  his release pending the Court's decision on extradition.

20  Pretrial services has interviewed Mr. Robertson, confirmed his

21  information, and prepared a written report for the Court.

22  II.  LEGAL STANDARD

23       As the Court and the government have noted, the standard for

24  release pending extradition is a demanding one.  Bail is not

25  foreclosed where special circumstances exist.  <u>Wright v. Henkel</u>,

26  190 U.S. 40 (1903).  The defendant facing extradition has the

27  burden of establishing special circumstances for a court to order

28

   Motion for Release –
   Robertson                    1

conditional release.  <u>Salerno v. United States</u>, 878 F.2d 317 (9th Cir. 1989).  Those circumstances mut exist in addition to the absence of flight risk.  <u>Salerno</u>, 878 F.2d at 317.  One such circumstance is the "raising of substantial claims upon which there is a high probability of success."  <u>Id</u>.  Other circumstances include an unusual delay in the proceedings (<u>Salerno</u>, 878 F.2d at 317), where issues involved in the extradition are of extreme complexity and involve issues of first impression (<u>United States v. Kamrin</u>, No. 87.251M-01 (W.D. Wash. Dec. 10, 1982)), whether the resolution of the extradition would be especially lengthy (<u>United States v. Taitz</u>, 130 F.R.D. 442, 446 (S.D. Cal. 1990)), and whether the law of the requesting state permits extradition in these circumstances (<u>Id.</u>).

Under <u>Salerno</u>, this Court must determine if there is a risk of flight, and if no risk exists, whether there are any special circumstances.  <u>See</u> <u>Taitz</u>, 130 F.R.D. at 445.  However, the State Department has recognized that in general, the practice of the district courts is to release persons provisionally arrested and facing extradition on bail in the absence of a risk of flight. <u>Taitz</u>, at 446; <u>United States v. Messina</u>, 566 F.Supp. 740, 742 (E.D. N.Y. 1983).

Risk of flight (or lack thereof) may be determined by looking at the traditional factors, such as family and other ties to the United States, support from family and friends, that a person was living openly and without an alias, lack of ties to other countries to which a person could flee, collateral consequences of further flight, access to assets to fund flight,

1  and availability of a bond.  See Taitz, 130 F.R.D. at 445

2  (discussing traditional factors regarding flight risk).

3  III. THE FACTS SURROUNDING MR. ROBERTSON'S LIFE IN THE UNITED
      STATES, HIS STRONG TIES TO THE COMMUNITY, AND THE UNIQUE
4     HISTORY OF HIS CASE WEIGH IN FAVOR OF RELEASE, AS DOES THE
      COMPLEXITY OF THE EXTRADITION ISSUES AND THE LIKELIHOOD OF
5     DELAY IN RESOLVING THEM

6       A warrant was issued on March 31, 2010 because of Mr.

7  Robertson's loss of contact with the officer supervising his

8  long-term supervision.  Affidavit of Prosecutor Murray, para. 5.

9  On April 8, 2010, Canadian authorities were well aware of Mr.

10 Robertson's home address in South Lake Tahoe.  Extradition

11 Packet, Affidavit of Constable Topacio, para. 8.  Also on that

12 date they confirmed that Mr. Robertson had crossed into the

13 United States on March 12, 2010 using his own name and had not

14 crossed back.  Id., para. 9.  His car was registered to his South

15 Lake Tahoe home.  Within days, Canadian authorities had further

16 confirmed from U.S. authorities that when Mr. Robertson crossed

17 into the United States he stated he was traveling to his condo in

18 South Lake Tahoe.  Id., para. 15.

19      In October 2010, Canadian authorities confirmed that Mr.

20 Robertson had received a traffic ticket in Monterey California

21 and had provided the South Lake Tahoe address.  Id., para. 17.

22 In March 2011, South Lake Tahoe Police confirmed that Mr.

23 Robertson was openly living in his South Lake Tahoe address.  Six

24 months later, in September 2011, a manager at the South Lake

25 Tahoe condo contacted law enforcement and confirmed for them

26 again that Mr. Robertson was living openly in his home.  Id.,

27 para. 23.  Authorities further confirmed at this point that Mr.

28

Motion for Release –
Robertson                    3

Robertson's California driver's license had a South Lake Tahoe address, and that his registered vehicle continued to as well. Id., para. 25.  Internet research by Constable Topacio ten days later, on September 19, 2011, again confirmed that Mr. Robertson's state bar membership profile openly displayed that same home address.

After 18 months, Canadian authorities requested that Mr. Robertson be arrested in late September 2011.  It appears to his friends and neighbors in the condo community that the interest in arresting and extraditing Mr. Robertson in late 2011 arose out of that most banal of circumstances: a dispute involving the administration of a condominium community.  As detailed in letters previously provided to the Court, that dispute came to a head in September 2011.  Mr. Robertson had decided to run for the condo board of directors.  After Mr. Robertson's arrest, members of the condo board even used his circumstances to threaten other condo owners.  Exh. A (sign posted in the elevator and hall of the condo).

Many of Mr. Robertson's neighbors, family members, and friends have submitted letters in support of him.  Those letters have previously been submitted to the Court and are in the record as Appendix B to Mr. Robertson's Brief in Opposition to Extradition (Doc. 18-1).  Mr. Robertson requests that the Court consider all these letters in support of his motion for release.

Although the letters are too numerous to cite extensively, they testify to Mr. Robertson's character, his respect for the law, and his deep ties to his community.  Derek Sidenius, a

journalist in Canada, has known Jim since he was a lawyer in Victoria in the early 1980s.  He notes that he has stood by Jim because he believes in his innocence, and that Jim "is as respectful of the law as anyone I have ever met."  (Doc. 18-1, p. 17.)  Bob Orrick, a Korean War veteran, journalist, and business man, states "[W]ere I at sea in an open boat and in extreme distress, and I had but one choice as a companion, I would not hesitate in holding out my hand to James William Robertson."  (Doc. 18-1, p. 21.)

Ron Nelson, who has traveled from South Lake Tahoe to attend Jim's court hearing, states, "Jim is a classic example of the Six Pillars of Character: Trustworthiness, Respect, Responsibility, Fairness, Caring and Citizenship."  (Doc. 18-1, p. 23.)  Retired doctor Howard Friedman, Jim's South Lake Tahoe neighbor, states, "Attorney James Robertson is the very best man I've met in my 67 years."  (Doc. 18-1, p. 38.)  The letters testify to Mr. Robertson's character for dependability, non-violence, and respect for the law.

Mr. Robertson has remained in custody at the Sacramento County Jail ever since his arrest on September 30, 2011.  He sought a quick resolution to his extradition, initially setting a hearing for October 24, 2011.  However, that was continued twice because the extradition packet was not received until November 9, 2011.  The government promptly provided a copy to the defense that day, and both parties worked to present arguments to the Court the following week. Because of the complexity of the issues the extradition hearing began on November 16, 2011 and continued

on December 9, 2011 when the issue was submitted to the Court for decision.  As the Court has noted, the issues appear complex and difficult to resolve.

Mr. Robertson is 70 years old.  He lives on a pension, with enough to continue to pay his mortgage, his condo association fees, and his necessities of life.  He is willing to post his condo as security for his release.[1]  He is also willing to wear an ankle monitor with any kind of electronic monitoring that the Court may order.  One of his numerous friends could be appointed a third-party custodian.  He will accept any conditions imposed by the Court.

Mr. Robertson certainly has no desire to go to Canada, which is the requesting country in this extradition case.  He has no significant ties in any country other than the United States. Except for family members in other states, all his ties in the United States are in California, from Lake Tahoe to Santa Barbara.  He has done minimal international travel, mostly during his naval service.  He will give up his U.S. passport upon release.

Mr. Robertson was twice a member of the Canadian Navy and honorably discharged from that service and the reserves.  He has lived and worked in the United States since 1996, becoming a U.S. citizen in 1997.  Mr. Robertson is a long-time attorney and member of the California State Bar.  He has had a consistent work

---

[1]   The website often used by Pretrial Services for assessing property value, zillow.com, shows that Mr. Robertson's property is valued over $250,000.  Since he owes approximately $36,000, that provides at least $200,000 of value to secure his release.

history with much community involvement.  His involvement is
reflected in the supportive letters the Court has received from
his friends.  He has absolutely no history of any drug or alcohol
abuse.

Regarding his convictions in Canada, Mr. Robertson
steadfastly maintained his innocence of the charges and his case
went to trial several times.  Except for one allegation by a
family friend, all of the charged incidents involved family
members, and all were alleged to have happened in the family home
between 1967 to 1976, and once in 1983.  The charges were leveled
in 1997 during a vicious family breakup.

As early discussed in the extradition briefing, Mr.
Robertson was fully compliant with his terms of statutory release
and parole in Canada and discharged that sentence fully in 2010.
The violation allegations involve his March 2010 return to his
home in California, nothing more.

The government has previously argued that Mr. Robertson is
"highly adept at moving himself; concealing his identity; at
secreting and accessing financial and other resources in aid of
flight."  Govt. Opp. to Bail, Doc. 7, p. 11.  These contentions
were made well before the government had received the extradition
packet and are completely contradicted by the facts recounted in
that packet.  Mr. Robertson had registered his South Lake Tahoe
address in every place Canadian authorities looked: his vehicle
registration, his state bar membership, his driver's license.
Extradition Packet, Affidavit of Topacio.  Mr. Robertson even
provided that address to police when he got a traffic ticket.

When he crossed the border under his own name in March 2010, Mr. Robertson told U.S. authorities that he was going to live in his condo in Lake Tahoe.  He lived there openly for the 18-months that Canadian authorities knew where he was and did nothing.  In March 2011, local police in Tahoe confirmed for Canadian authorities that Mr. Robertson was living there, but they did nothing.  He did not hide himself, he did not change his identification, he did not cross the border illegally, and he did not try to conceal where he was living.  He used his own car, condo, and bank accounts to live.

The government's own evidence shows that Mr. Robertson is not a flight risk and that ample conditions can be set for his release.  It also shows that the government had no concern about Mr. Robertson's flight risk or danger to the community during the 18-months it waited before arresting him for extradition.  With a substantial property bond and ankle monitor, Mr. Robertson cannot be considered a flight risk in this case.

Given the higher standard applicable to extradition cases, the next question for the Court is whether any special circumstances exist in this case in favor of release.  Several circumstances – all of which have previously been approved by other courts, including the Ninth Circuit – apply in this case. First, the extradition issues in this case are complicated and it is not a foregone conclusion that extradition will be granted. Further it is not clear how long the extradition decision will take, and how long litigation will proceed until the decision is finalized.  The issues raised in this extradition proceeding are

unusual and complex for this Court to resolve.  The Ninth Circuit in <u>Salerno</u> specifically acknowledged these special circumstances would support release.  878 F.2d at 317.  It noted that both the "raising fo substantial claims upon which the [defendant] has a high probability of success" and an "unusual delay" in the process would be circumstances justifying bail.  <u>Id.</u>  Both of those apply here.

Second, Canadian law allows for the release of a person pending extradition proceedings and puts the burden on the government to justify detention.  Accordingly, release pending extradition is much more available in Canada than in the United States, and principles of diplomatic comity support release in this case.

The Canadian Extradition Act, S.C. 1999, c. 18 (<u>available</u> at <u>http://canlii.ca/t/j0r8)</u> provides for release in a case like this "with or without conditions. . . ."[2]  The Extradition Act incorporates the general standards of judicial interim release from the Canadian Criminal Code, section 515(10).  <u>See</u> <u>Seifert v. AG Canada et al.</u>, 2002 BCCA 385, para. 4 (Ct. App. B.C. 2002).  Extradition Act, section 19.  The Canadian Criminal Code states that a person may be detained "only on one or more of the following grounds":

---

[2]     If the person is arrested on the request of the International Criminal Court (which Mr. Robertson is <u>not</u>), the standard is a heightened one that "given the gravity of the alleged offense, there are urgent and exceptional circumstances that justify release – with or without conditions – and that the person will appear as required."  Extradition Act, section 18(1)(a)(ii).  However, in "any other case" the judge shall "order the release, with or without conditions, or detention in custody of the person."  <u>Id.</u>, section 18(1)(b).

(10) For the purposes of this section, the detention of an accused in custody is justified only on one or more of the following grounds:

(a) where the detention is necessary to ensure his or her attendance in court in order to be dealt with according to law;

(b) where the detention is necessary for the protection or safety of the public, including any victim or witness to the offence, having regard to all the circumstances including any substantial likelihood that the accused will, if released from custody, commit a criminal offence or interfere with the administration of justice; and

(c) on any other just cause being shown and, without limiting the generality of the foregoing, where the detention is necessary in order to maintain confidence in the administration of justice, having regard to all the circumstances, including the apparent strength of the prosecution's case, the gravity of the nature of the offence, the circumstances surrounding its commission and the potential for a lengthy term of imprisonment.

As discussed by the district court in <u>Taitz</u>, "the rational for distinguishing pretrial release in extradition cases from federal criminal cases is that extradition cases involve an overriding national interest in complying with treaty obligations." <u>Taitz</u>, 130 F.R.D. at 444.  However, as in <u>Taitz</u>, "The diplomatic necessity for denying bail does not exist in this case."  The standard for bail in an extradition case in Canada is much less onerous than that in the United States.  To paraphrase the court in <u>Taitz</u>, there can be no diplomatic concern by Canada if a United States court release on bail a person who is facing extradition to Canada where bail is available in Canada for persons facing extradition to the United States.  <u>Taitz</u>, 130 F.R.D. at 447.  That was also found to be a special circumstance in favor of release.

These special circumstances amply support Mr. Robertson's

Motion for Release –
Robertson                          10

1  request for release in this case.  It is clear that he is not a

2  flight risk nor a danger to the community.  Mr. Robertson

3  requests that the Court release him upon the posting of his South

4  Lake Tahoe property as security, and that he also be placed on

5  ankle monitor with a curfew.  Mr. Robertson will accept all other

6  conditions imposed by the Court.

7  IV.  CONCLUSION

8       For the foregoing reasons, Mr. Robertson respectfully

9  requests that the Court release him pending its decision on

10 extradition.

11 DATED: December 30, 2011       Respectfully submitted,

12                                DANIEL J. BRODERICK
                                  Federal Defender
13

14                                /s/ Rachelle Barbour
                                  RACHELLE BARBOUR
15                                Research and Writing Attorney
                                  Attorney for Defendant
16                                JAMES WILLIAM ROBERTSON

17

18

19

20

21

22

23

24

25

26

27

28

Motion for Release –
Robertson                    11