BENJAMIN B. WAGNER
United States Attorney
MICHELLE A. PRINCE
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, California 95814
Telephone: (916) 554-2758

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:11-MJ-310 KJN |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO BAIL MEMORANDUM |
| v. | |
| JAMES WILLIAM ROBERTSON, | DATE: January 18, 2011<br>TIME: 2:00 p.m.<br>COURT: Honorable Dale A. Drozd |
| Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO BAIL**

The defendant, James William Robertson, is a fugitive. On March 31, 2010, a Warrant of Apprehension and Suspension of Long Term Supervision was issued by the Vancouver Parole Office for the Correctional Service of Canada. Robertson is seeking harbor in the United States to escape serving a sentence on the following charges: (1) sexual assault, in violation of section 246.1 of the Criminal Code of Canada ("CCC"); (2) two counts of

1

indecent assault of a male person upon another male person, in violation of section 156 of the CCC; (3) two counts of indecent assault upon a female, in violation of section 141(1) of the CCC; (4) three counts of indecent assault upon a female, in violation of section 149(1) of the CCC; (5) rape, in violation of section 136(a) of the CCC; (6) rape, in violation of section 144 of the CCC; (7) common assault, in violation of section 231(1) of the CCC; and (8) common assault, in violation of section 245(1) of the CCC all committed in Sidney, British Columbia between 1966 and 1988. In addition, Robertson is also wanted to stand trial on three counts of failing to comply with a long term supervision order, contrary to Section 753.3(1) of the CCC.

Case law supports the strong presumption against the granting of bail in international extradition cases for obvious reasons. Both the United States Supreme Court and the federal courts of appeals have long held that bail should be granted in only the most unusual of circumstances. The defendant has not presented any unusual circumstances in this case. In fact the defendant's conduct in fleeing the jurisdiction where he faced supervision and registration as a sex offender, seeking harbor in another country, fighting the extradition process, is to be expected and not unusual for someone who has already run from the law.

In the landmark case <u>Wright v. Henkel</u>, 190 U.S. 40 (1903), the Supreme Court affirmed the detention without bail of a fugitive sought by Great Britain for defrauding a corporation of which he was a director. The United States argued in <u>Wright</u> that

extradition courts were without power to allow bail because no statute provided for such power. Id. at 55. Although the Court stated that it was unwilling to hold that the circuit courts do not possess power with respect to admitting fugitives to bail other than as specifically vested by statute, the court still cautioned that " . . . bail should not ordinarily be granted in cases of foreign extradition . . . ." Id. at 63.

In establishing this presumption against bail, the Supreme Court in Wright explained that when a foreign government makes a proper request under a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended.

The reasons for this presumption against bail in international extradition cases are compelling. First, it is necessary for the United States to meet its legal treaty obligations. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations. Such reciprocity would be defeated if a fugitive flees after being released on bond. Wright v. Henkel, 190 U.S. at 62; see also U.S. v. Leitner, 784 F.2d 159, 160-61 (2d Cir. 1986). Article 11 of the Treaty between the United States and Canada provides for the extradition of persons accused or convicted of the above offenses.

Second, a person sought for extradition already is an international fugitive from justice. Mr. Robertson is being sought for extradition and is already an international fugitive.

1  The defense minimizes the defendant's conduct by stating that
2  Robertson simply "lost contact" with the officer supervising his
3  long-term supervision. (Robertson's Motion For Release, pg 3).
4  Robertson did not lose contact with his parole office, Robertson
5  deliberately fled the country.  No matter how the defendant tries
6  to reduce his conduct to a simple inadvertent loss of
7  communication between the Canadian authorities and himself, the
8  fact remains that the defendant is in federal court because he
9  left Canada's jurisdiction without authorization and is in
10 custody because he is an international fugitive.  By virtue of
11 the defendant being before this court, Robertson has already
12 shown a willing disregard for the law and that he will readily
13 leave a jurisdiction in order to escape further penalty.
14     Therefore, it is more than reasonable to think that if
15 released on bail, Robertson would flee this jurisdiction, now
16 that he is fully alerted to the charges and consequences that he
17 faces should he be returned to Canada. Even if Robertson were not
18 in flight, which the defendant asserts in his motion, the
19 impending extradition to Canada, to face serious criminal charges
20 which the defendant is now fully aware of, is itself a strong
21 incentive for Robertson to flee.

23 **ROBERTSON HAS NOT ESTABLISHED THAT HE DOES NOT POSE A RISK OF FLIGHT OR DANGER TO THE COMMUNITY AND THAT**
24 **"SPECIALCIRCUMSTANCES" EXIST WARRANTING RELEASE ON BAIL.**
25     In order to be released on bail, Robertson must establish
26 "Special Circumstances" and must not pose a risk of flight for
27 the Court to consider the question of bail. To qualify for bail,

4

Robertson is required to make a two-part showing that: (1) he or she is not a flight risk and (2) that "special circumstances" exist warranting the granting of bail. See e.g., United States v. Ramnath, 533 F. Supp. 2d 662, 665 (E.D. Tex. 2008); In re Extradition of Molnar, 182 F. Supp. 2d 682, 687 (N.D. Ill. 2002); In re Extradition of Nacif-Borge, 829 F.Supp. 1210, 1215 (D. Nev. 1993); In re Extradition of Chapman, 459 F.Supp.2d 1024, 1026-27 (D. Haw. 2006); In re Extradition of Santos, 473 F. Supp. 2d 1030, 1035-36 (C.D. Cal. 2006).

> Federal courts have uniformly held that bail shall not be granted except under "special circumstances." See United States v. Leitner, 784 F.2d at 160 (bail in extradition cases should be granted "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory"), (quoting In re Mitchell, 171 F. 289 (S.D.N.Y. 1909)(Hand, J.); Salerno v. United States, 878 F.2d 317, 318 (9th Cir. 1989)("only 'special circumstances' will justify bail"); Koskotas v. Roche, 931 F.2d 169, 175(1st Cir. 1991)("in a case involving foreign extradition, bail should not be granted absent special circumstances"). The defendant has established none.

First, as stated in the government's initial motion against bail, the strong presumption against bail is supported by the twelve convictions against the defendant which are primarily sexual offences. In March 2010, his parole officer lost contact with the defendant. Contrary to the conditions of his Long-Term Supervision Order Robertson moved from his sister's residence in Richmond, British Columbia without advising his parole officer and ceased reporting to her. He fled to the United States. The defendant remained in the United States for 18 months, an unregistered sex offender and a person who is under absolutely no

supervision.

Second, even in the face of arguable "special circumstances", findings regarding danger to a community both here and abroad would preclude bail. See In re Extradition of Gonzalez, 52 F.Supp.2d 725, 735 (W.D. La. 1999); Ramnath, 533 F. Supp. 2d at 665; Extradition of Molnar, 182 F. Supp. 2d at 687; Extradition of Nacif-Borge, 829 F.Supp. at 1215; Extradition of Santos, 473 F. Supp. 2d at 1035-36.

Robertson was declared a long term offender and this declaration was upheld upon appeal to the British Columbia Court of Appeal ®. v. J.W.R. 2010 BCCA 66. Robertson is evading the strict supervision of his conduct intended by the Court in imposition of the long-term offender designation and poses a risk to commit serious personal injury offences while a fugitive in the United States.

The defendant's statement that the interest in arresting and extraditing the defendant in late 2011 arouse out of a dispute involving the administration of a condominium community is untrue. Robertson came to the attention of the South Lake Tahoe community and law enforcement when he befriended a mother and her seven year old daughter. After the mother needed assistance from someone to baby-sit her child, Robertson volunteered. It was not until after he spent time alone with the seven year old did he disclose to the mother that he was convicted of child abuse in Canada. The defendant told the mother that her daughter was

"spirited" and a "tease." It was the mother who contacted the authorities out of concern for her child's welfare. (See Declaration of United States Marshal Biernat; See Also, South Lake Tahoe Police Department Report).

Furthermore, the defendant misstates the facts when it asserts that the "government had no concern about Mr. Robertson's flight risk or danger to the community during the 18-months it waited before arresting him for extradition." (Robertson's Motion For Release, pg 8). This is not accurate. On September 29, 2011, the South Lake Tahoe Chief of Police became aware that the defendant baby-sat a seven year old girl. (See, South Lake Tahoe Police Department Report). Paedophiles, often spend time gaining their victims trust before actually sexually abusing them. The term is known as "grooming." This is why the defendant is expressly prohibited as a condition of the long term supervision order, to have direct or indirect contact with any person under the age of 18 unless supervised by a responsible adult, pre-approved in writing by his parole officer.

On September 29, 2011, the United States Attorney's office was made aware of Mr. Robertson's fugitive status. As soon as the government was alerted, a provisional arrest warrant was prepared and Judge Kendall Newman signed the warrant for arrest for extradition on the exact same day, September 29, 2011.

Given the serious nature of his convictions involving the sexual assault of minors and the defendant's apparent denial

7

regarding his egregious conduct, the community both here in the United States and abroad are at risk if the fugitive is released. The fugitive is a risk of flight and a danger to the community, therefore the Court need go no further in order to deny the application for bail.

**ROBERTSON HAS FAILED TO ESTABLISH ANY SPECIAL CIRCUMSTANCES**

If the court finds that the fugitive is not a risk of flight and poses no danger to the community, the fugitive must make an affirmative showing of "special circumstances." Here, the defendant has failed to do so.

The ninth circuit in <u>Salerno</u>, 878 f.2d at 317, at most suggests that examples of what can be deemed "special circumstances" could include raising substantial claims upon which the appellant has a high probability of success, a serious deterioration in health and an unusual delay in the appeal process. <u>Id</u>. Even if the court deems the issues in this case complex, there has not been an unusual delay in the proceedings. The court gave the defendant latitude to present various arguments to the court, the defendant cannot now argue that by doing so it has created an unusual delay which justifies his release. The defendant, also tries to support his argument for "special circumstance" by interpreting Canadian law. Canadian law is not what governs this motion hearing. The federal statute governing extradition procedures in the United States pursuant to

treaties with other nations is 18 U.S.C. §§ 3184 et seq., and does not provide for bail. Further, an extradition proceeding is not a criminal case. See Kamrin v. United States, 725 F.2d 1225, 1227-1228 (9th Cir. 1984); Martin v. Warden, Atlanta Penitentiary, 993 F.2d 824, 829 (11th Cir. 1993). Consequently, the Bail Reform Act, Title 18 U.S.C. §§ 3141 et seq., and its criteria governing the allowance and the amount of bail in United States criminal cases does not apply in extradition matters. The Bail Reform Act applies only to "offenses" against the United States that are triable in United States courts. See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2).

Finally, Courts have held that extradition necessitates "a narrow scope of review that is based on respect for sovereignty of other nations. The defense continually requests that this court interpret Canadian law. As previously stated by the government courts have held that extradition necessitates "a narrow scope of review that is based on respect for sovereignty of other nations. While our courts should guarantee that all persons on our soil receive due process under our laws, that power does not extend to overseeing the criminal justice system of other countries." In the Matter of Jan Alf Assarsson, 635 F.2d 1237 (7th Cir. 1980); (Reply brief to defendant's opposition to extradition).

Therefore judicial power does not extend to overseeing the criminal justice system of other countries or interpreting what

possibly could happen in Canada. It was the defendant who chose to flee to the United States, and is appearing before this United States Federal court.

## CONCLUSION

It is the government's belief that with this fugitive is a risk of flight and a danger to the community, therefore the Court need go no further in order to deny Robertson's release. For the reasons stated above, the government by the United States and on behalf of Canada, pursuant to the extradition treaty in force between the United States and Canada, respectfully requests that the court deny the defendant's motion for release.

BENJAMIN B. WAGNER
United States Attorney

Date: January 17, 2011        /s/ Michelle A. Prince
                              By: MICHELLE A. PRINCE
                              Assistant United States Attorney