GOVERNMENT EXHIBIT

CARDELS 800-763-0399

1

# United States of America



## DEPARTMENT OF STATE

### *To all to whom these presents shall come, Greetings:*

I Certify That Patricia E. McDonough, whose name is subscribed to the document hereunto annexed, was at the time of subscribing the same Attorney Adviser, Office of the Legal Adviser, Department of State, United States of America, and that full faith and credit are due to her acts as such.

*This certificate is not valid if it is removed or altered in any way whatsoever*

In testimony whereof, I, Hillary Rodham Clinton, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this twenty-eighth day of October, 2011.

_____ Secretary of State

By _____
Assistant Authentication Officer,
Department of State

*Issued _____ at to CHXIV _____ of*
*Sept. 1_____ 9, 1 Stat. 6_____ 2*
*USC 26_____ USC 2651a;_____*
*301; 28_____ 733 et. seq._____*
*1443(f);_____ 44 Federal _____*
*Civil Pro_____*

## DECLARATION OF PATRICIA E. MCDONOUGH

I, Patricia E. McDonough, declare and say as follows:

1. I am an Attorney-Adviser in the Office of the Legal Adviser, Department of State, Washington, D.C. This office has responsibility for extradition requests, and I am charged with the matter of the extradition case of James William Robertson. I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. In accordance with the provisions of the extradition treaty in full force and effect between the United States and Canada, the Canadian Embassy has submitted a diplomatic note (No. 235, dated October 5, 2011) formally requesting the extradition of James William Robertson. A copy of the diplomatic note is attached to this declaration.

3. The relevant and applicable treaty provisions in full force and effect between the United States and Canada are found in the Extradition Treaty between the United States of America and Canada of December 3, 1971, which entered into force on March 22, 1976 (TIAS 8237), the Protocol Amending the Extradition Treaty with Canada of January 11, 1988, which entered into force on November 26, 1991, and the Second Protocol Amending the Extradition Treaty with Canada of January 12, 2001, which entered into force on April 30, 2003. Copies of the Treaty and the Protocol are attached to this declaration.

4. In accordance with Article 17 of the 1971 Extradition Treaty between the United States and Canada, the Government of the United States provides legal representation in its courts for Canada in its extradition requests, and Canada provides legal representation in its courts for extradition requests made by the United States.

5. The offenses for which extradition is sought are extraditable pursuant to Article 2 of the 1971 Extradition Treaty, as replaced by Article I of the 1988 Protocol. Article 2 of the 1971 Extradition Treaty, as replaced by Article I of the 1988 Protocol, provides that extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Canada and the United States by imprisonment or other form of detention for a term exceeding one year or any greater punishment.

6. The documents submitted by the Government of Canada in support of its extradition request were certified on October 5, 2011, by Silvia D. Johnson, Consul General of the United States of America in Ottawa, in accordance with Title 18, United States Code, Section 3190. Ms. Johnson, at the time of her certification, was the principal consular officer of the United States in Canada.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on October $2\,7$, 2011.

PATRICIA E. MCDONOUGH

Attachments:
1. Copy of Note
2. Copy of Treaty and Protocols



Canadian Embassy                    Ambassade du Canada

Note No. 0235

        The Embassy of Canada presents its compliments to the
Department of State and has the honour to request the extradition
of James William Robertson, a Canadian citizen born in Vancouver,
BC on July 12, 1940 and an American citizen since September 19,
1997, holder of  US passport No:712193774.

        The subject is described as being 183 cm in height;
weighs 77 kg; blue eyes; grey hair and has a faded tattoo of an
anchor "RCN"  on the left forearm and has a one and a half inch
scar on the right eye. A photograph of the person sought is
appended to the supporting extradition documents.

        Subject is to serve the remainder of a sentence (9
years 9 months 18 days of a long term supervision order) imposed
on January 20, 2005 for:

•        One count of sexual assault, contrary to section 246.1
         of the *Criminal Code*;

•        Two counts of indecent assault of a male person upon
         another male person, contrary to section 156 of the
         *Criminal Code*;

•        Two counts of indecent assault upon a female, contrary
         to section 141(1) of the *Criminal Code*;

                                                    .../2

- Three counts of indecent assault upon a female contrary to section 149(1) of the *Criminal Code*;
- One count of rape, contrary to section 136(a) of the *Criminal Code*;
- One count of rape, contrary to section 144 of the *Criminal Code*;
- One count of common assault, contrary to section 231(1) of the *Criminal Code*; and
- One count of common assault, contrary to section 245(1) of the *Criminal Code*.

In addition to this cumulative jail sentence of 5 years, the Court found that the subject posed a substantial risk to re-offend sexually, and, in accordance with section 753.1 of the *Criminal Code* of Canada, found him to be a long-term offender and ordered him to be supervised upon his release by the Correctional Service of Canada for a period of ten years (the "Long-term Offender Order").

The subject completed the 5 year sentence on January 19, 2010, on which date he became legally obligated to comply with the terms and conditions of the Long-term Offender Order. After serving less than three months of his Long-term Offender Order he left Canada, he has 9 years 9 months 18 days remaining to be served on the order.

The Warrant of Committal upon conviction was issued by Honourable Madam Justice Kirkpatrick, a Justice of the Supreme Court of British Columbia on January 20, 2005.

The subject is also to stand trial as follows: James Williams Robertson on or about March 12, 2010, near Surrey, British Columbia, did commit the following offences:

- Three counts of breach of order for long term supervision, contrary to section 753.3(1) of the *Criminal Code*.

Information was sworn on September 13, 2010 by Court Liaison Officer L. Witzer for Sidney, British Columbia.

Warrant for arrest was issued on September 23, 2010 by Justice of the Peace R. Speed.

There is no statute of limitations in respect of the offences for which the person sought stands charged. The offences are punishable by more than one year of imprisonment.

The last known location of the accused was 3535 Lake Tahoe Blvd, Apartment # 125, South Lake Tahoe, California, USA. James William Robertson was provisionally arrested in South Lake Tahoe on September 30, 2011.

The Prosecuting Attorney is Catherine Anne Murray, Q.C., Crown Counsel, Ministry of Attorney General of British Columbia, tel 250-387-6459.

The Canadian Investigator is Cst Hernan Topacio, Royal Canadian Mounted Police, "E" Division Major Crimes Section, Integrated Child Exploitation Unit, office tel:604-598-4625, cell phone: 604-317-2956.

The Foreign Investigator is Det Doug Sentell, South Lake Tahoe Police Department, tel: 530-542-6138.

The Embassy of Canada avails itself of this opportunity to renew to the Department of State the assurances of its highest consideration.



WASHINGTON, D.C.

October 05, 2011

| 101st Congress | | Treaty Doc. |
|---|---|---|
| 2d Session | SENATE | 101-17 |

# PROTOCOL AMENDING THE EXTRADITION TREATY WITH CANADA

## MESSAGE

### FROM

# THE PRESIDENT OF THE UNITED STATES

#### TRANSMITTING

THE PROTOCOL SIGNED AT OTTAWA ON JANUARY 11, 1988, AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA, SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974

Entered into Force on November 26, 1991



English Text Only

APRIL 24, 1990.—Protocol was read the first time, and together with the accompanying papers, referred to the Committee on Foreign Relations and ordered to be printed for the use of the Senate

U.S. GOVERNMENT PRINTING OFFICE

39-118          WASHINGTON : 1990

authority in the requested State may, in its discretion, grant extradition."

## ARTICLE IV

Paragraph (2) of Article 4 of the Extradition Treaty, as amended, is deleted and replaced by the following:

"(2) For the purpose of this Treaty, the following offenses shall be deemed not to be offenses within subparagraph (iii) of paragraph 1 of this Article:

"(i) An offense for which each Contracting Party has the obligation pursuant to a multilateral international agreement to extradite the person sought or to submit the case to its competent authorities for the purpose of prosecution;

"(ii) Murder, manslaughter or other culpable homicide, malicious wounding or inflicting grievous bodily harm;

"(iii) An offense involving kidnapping, abduction, or any form of unlawful detention, including taking a hostage;

"(iv) An offense involving the placing or use of explosives, incendiaries or destructive devices or substances capable of endangering life or of causing grievous bodily harm or substantial property damage; and

"(v) An attempt or conspiracy to commit, or counselling the commission of, any of the foregoing offenses, or aiding or abetting a person who commits or attempts to commit such offenses."

## ARTICLE V

Article 7 of the Extradition Treaty is deleted and replaced by the following:

### "ARTICLE 7

"When the person sought is being proceeded against or is serving a sentence in the requested State for an offense other than that for which extradition is requested, the requested State may surrender the person sought or postpone surrender until the conclusion of the proceedings or the service of the whole or any part of the sentence imposed."

## ARTICLE VI

Paragraph (3) of Article 11 of the Extradition Treaty is deleted and replaced by the following:

"(3) A person arrested shall be set at liberty upon the expiration of sixty days from the date of arrest pursuant to such application if a request for extradition and the documents specified in Article 9 have not been received. This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request and documents are subsequently received."

## ARTICLE VII

The Extradition Treaty is amended by adding the following after Article 17:

## "Article 17 bis

"If both contracting Parties have jurisdiction to prosecute the person for the offense for which extradition is sought, the executive authority of the requested State, after consulting with the executive authority of the requesting State, shall decide whether to extradite the person or to submit the case to its competent authorities for the purpose of prosecution. In making its decision, the requested State shall consider all relevant factors, including but not limited to:

"(i) the place where the act was committed or intended to be committed or the injury occurred or was intended to occur;

"(ii) the respective interests of the Contracting Parties;

"(iii) the nationality of the victim or the intended victim; and

"(iv) the availability and location of the evidence."

## Article VIII

Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date.

## Article IX

(1) This Protocol shall be subject to ratification in accordance with the applicable procedures of the Government of the United States and the Government of Canada and instruments of ratification shall be exchanged as soon as possible.

(2) The Protocol shall enter into force upon the exchange of instruments of ratification.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Protocol.

DONE in duplicate at Ottawa, this 11th day of January 1988, in the English and French languages, the two texts being equally authentic.

For the Government of the United States of America.

GEORGE P. SHULTZ.

For the Government of Canada.

JOE CLARK.

○

PROTOCOL AMENDING THE TREATY ON EXTRADITION BETWEEN THE UNITED STATES OF AMERICA AND CANADA SIGNED AT WASHINGTON ON DECEMBER 3, 1971, AS AMENDED BY AN EXCHANGE OF NOTES ON JUNE 28 AND JULY 9, 1974

The Government of the United States of America and the Government of Canada;

Desiring to make more effective the Extradition Treaty between the Contracting Parties, signed at Washington on December 3, 1971, as amended by the agreement effected by an Exchange of Notes on June 28 and July 9, 1974 (hereinafter referred to as "the Extradition Treaty");

Have agreed as follows:

## ARTICLE I

Article 2 of the Extradition Treaty is deleted and replaced by the following:

### "ARTICLE 2

"(1) Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment.

"(2) An offense is extraditable notwithstanding

"(i) that conduct such as interstate transportation or use of the mails or of other facilities affecting interstate or foreign commerce, required for the purpose of establishing jurisdiction, forms part of the offense in the United States, or

"(ii) that it relates to taxation or revenue or is one of a purely fiscal character."

## ARTICLE II

The SCHEDULE to the Extradition Treaty, as amended, is deleted.

## ARTICLE III

Paragraph (2) of Article 3 of the Extradition Treaty is deleted. Paragraph (3) of Article 3 of the Extradition Treaty is amended to read as follows:

"(2) When the offense for which extradition is requested was committed outside the territory of the requesting State, the executive or other appropriate authority of the requested State shall grant extradition if the laws of the requested State provide for jurisdiction over such an offense committed in similar circumstances. If the laws in the requested State do not so provide, the executive

[Reprint of English text only]

# EXTRADITION

Treaty Between the
UNITED STATES OF AMERICA
and CANADA

Signed at Washington December 3, 1971

*and*

Agreement Amending the Treaty
Effected by Exchange of Notes
Signed at Washington June 28 and July 9, 1974



VIII

be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Second Protocol by the Senate at an early date.

Respectfully submitted,

COLIN L. POWELL.

# CANADA

## Extradition

*Treaty signed at Washington December 3, 1971;*
*And agreement amending the treaty*
*Effected by exchange of notes*
*Signed at Washington June 28 and July 9, 1974;*
*Ratification of the treaty, as amended, advised by the Senate of*
*the United States of America December 1, 1975;*
*Ratified by the President of the United States of America De-*
*cember 12, 1975;*
*Ratified by Canada February 2, 1976;*
*Ratifications exchanged at Ottawa March 22, 1976;*
*Proclaimed by the President of the United States of America*
*May 6, 1976;*
*Entered into force March 22, 1976.*

---

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

CONSIDERING THAT:

The Treaty on Extradition between the United States of America and Canada was signed at Washington on December 3, 1971, as amended by an exchange of notes on June 28 and July 9, 1974, the original of which Treaty, as amended, is hereto annexed;

The Senate of the United States of America by its resolution of December 1, 1975, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty, as amended;

The Treaty was ratified by the President of the United States of America on December 12, 1975, in pursuance of the advice and consent of the Senate, and has been duly ratified on the part of Canada;

The respective instruments of ratification were exchanged at Ottawa on March 22, 1976;

It is provided in Article 18 of the Treaty that the Treaty shall enter into force upon the exchange of ratifications;

Now, THEREFORE, I, Gerald R. Ford, President of the United States of America, proclaim and make public the Treaty, as amended,

to the end that it shall be observed and fulfilled with good faith on and after March 22, 1976, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this sixth day of May in the year of our Lord one thousand nine hundred seventy-six [SEAL] and of the Independence of the United States of America the two hundredth.

GERALD R. FORD

By the President:
JOSEPH JOHN SISCO
*Acting Secretary of State*

### TREATY ON EXTRADITION BETWEEN
### THE UNITED STATES OF AMERICA
### AND CANADA

The United States of America and Canada, desiring to make
more effective the cooperation of the two countries in the
repression of crime by making provision for the reciprocal
extradition of offenders, agree as follows:

### ARTICLE 1

Each Contracting Party agrees to extradite to the other, in the circumstances and subject to the conditions described in this Treaty, persons found in its territory who have been charged with, or convicted of, any of the offenses covered by Article 2 of this Treaty committed within the territory of the other, or outside thereof under the conditions specified in Article 3(3) of this Treaty.

### ARTICLE 2

(1)  Persons shall be delivered up according to the provisions of this Treaty for any of the offenses listed in the Schedule annexed to this Treaty, which is an integral part of this Treaty, provided these offenses are punishable by the laws of both Contracting Parties by a term of imprisonment exceeding one year.

(2)  Extradition shall also be granted for attempts to commit, or conspiracy to commit or being a party to any of the offenses listed in the annexed Schedule.

(3)  Extradition shall also be granted for any offense against a federal law of the United States in which one of the offenses listed in the annexed Schedule, or made extraditable by paragraph (2) of this Article, is a substantial element, even if transporting, transportation, the use of the mails or interstate facilities are also elements of the specific offense.

### ARTICLE 3

(1)  For the purpose of this Treaty the territory of a Contracting Party shall include all territory under the jurisdiction of that Contracting Party, including air space

and territorial waters and vessels and aircraft registered in
that Contracting Party or aircraft leased without crew to a lessee
who has his principal place of business, or, if the lessee has
no such place of business, his permanent residence in, that
Contracting Party if any such aircraft is in flight, or if any
such vessel is on the high seas when the offense is committed.
For the purposes of this Treaty an aircraft shall be considered
in flight from the moment when power is applied for the purpose
of the take-off until the moment when the landing run ends.

(2)  In a case when offense 23 of the annexed Schedule is
committed on board an aircraft at any time from the moment when
all its external doors are closed following embarkation until
the moment when any such door is opened for disembarkation, such
offense and any other offense covered by Article 2 committed
against passengers or crew of that aircraft in connection with
such offense shall be considered to have been committed within
the territory of a Contracting Party if the aircraft was
registered in that Contracting Party, if the aircraft landed in
the territory of that Contracting Party with the alleged offender
still on board, or if the aircraft was leased without crew to a
lessee who has his principal place of business, or, if the lessee
has no such place of business, his permanent residence in that
Contracting Party.

(3)  When the offense for which extradition has been requested
has been committed outside the territory of the requesting State,
the executive or other appropriate authority of the requested
State shall have the power to grant the extradition if the laws
of the requested State provide for jurisdiction over such an
offense committed in similar circumstances.

ARTICLE 4

(1)  Extradition shall not be granted in any of the following circumstances:

(i)  When the person whose surrender is sought is being proceeded against, or has been tried and discharged or punished in the territory of the requested State for the offense for which his extradition is requested.

(ii) When the prosecution for the offense has become barred by lapse of time according to the laws of the requesting State.

(iii) When the offense in respect of which extradition is requested is of a political character, or the person whose extradition is requested proves that the extradition request has been made for the purpose of trying or punishing him for an offense of the above-mentioned character.  If any question arises as to whether a case comes within the provisions of this subparagraph, the authorities of the Government on which the requisition is made shall decide.

(2)  The provisions of subparagraph (iii) of paragraph (1) of this Article shall not be applicable to the following:

(i)  A kidnapping, murder or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt to commit such an offense with respect to any such person.

(ii) When offense 23 of the annexed Schedule, or an attempt to commit, or a conspiracy to commit, or being a party to the commission of that offense, has been committed  on board an aircraft engaged in commercial services carrying passengers.

## ARTICLE 5

If a request for extradition is made under this Treaty for a person who at the time of such request, or at the time of the commission of the offense for which extradition is sought, is under the age of eighteen years and is considered by the requested State to be one of its residents, the requested State, upon a determination that extradition would disrupt the social readjustment and rehabilitation of that person, may recommend to the requesting State that the request for extradition be withdrawn, specifying the reasons therefor.

## ARTICLE 6

When the offense for which extradition is requested is punishable by death under the laws of the requesting State and the laws of the requested State do not permit such punishment for that offense, extradition may be refused unless the requesting State provides such assurances as the requested State considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed.

## ARTICLE 7

When the person whose extradition is requested is being proceeded against or is serving a sentence in the territory of the requested State for an offense other than that for which extradition has been requested, his surrender may be deferred until the conclusion of the proceedings and the full execution of any punishment he may be or may have been awarded.

8

## ARTICLE 8

The determination that extradition should or should not be granted shall be made in accordance with the law of the requested State and the person whose extradition is sought shall have the right to use all remedies and recourses provided by such law.

## ARTICLE 9

(1)  The request for extradition shall be made through the diplomatic channel.

(2)  The request shall be accompanied by a description of the person sought, a statement of the facts of the case, the text of the laws of the requesting State describing the offense and prescribing the punishment for the offense, and a statement of the law relating to the limitation of the legal proceedings.

(3)  When the request relates to a person who has not yet been convicted, it must also be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting State and by such evidence as, according to the laws of the requested State, would justify his arrest and committal for trial if the offense had been committed there, including evidence proving the person requested is the person to whom the warrant of arrest refers.

(4)  When the request relates to a person already convicted, it must be accompanied by the judgment of conviction and sentence passed against him in the territory of the requesting State, by a statement showing how much of the sentence has not been served, and by evidence proving that the person requested is the person to whom the sentence refers.

8237

9

## ARTICLE 10

(1) Extradition shall be granted only if the evidence be found sufficient, according to the laws of the place where the person sought shall be found, either to justify his committal for trial if the offense of which he is accused had been committed in its territory or to prove that he is the identical person convicted by the courts of the requesting State.

(2) The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when, in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada, or when, in the case of a request emanating from the United States, they are authenticated by an officer of the Department of State of the United States and are certified by the principal diplomatic or consular officer of Canada in the United States.

## ARTICLE 11

(1) In case of urgency a Contracting Party may apply for the provisional arrest of the person sought pending the presentation of the request for extradition through the diplomatic channel. Such application shall contain a description of the person sought, an indication of intention to request the extradition of the person sought and a statement of the existence of a warrant of arrest or a judgment of conviction against that person, and such further information, if any, as would be necessary to justify the issue of a warrant of arrest had the offense been committed, or the person sought been convicted, in the territory of the requested State.

(2)  On receipt of such an application the requested State shall take the necessary steps to secure the arrest of the person claimed.

(3)  A person arrested shall be set at liberty upon the expiration of forty-five days from the date of his arrest pursuant to such application if a request for his extradition accompanied by the documents specified in Article 9 shall not have been received.  This stipulation shall not prevent the institution of proceedings with a view to extraditing the person sought if the request is subsequently received.

ARTICLE 12

(1)  A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted nor be extradited by that State to a third State unless:

(i)  He has left the territory of the requesting State after his extradition and has voluntarily returned to it;

(ii) He has not left the territory of the requesting State within thirty days after being free to do so; or

(iii) The requested State has consented to his detention, trial, punishment for an offense other than that for which extradition was granted or to his extradition to a third State, provided such other offense is covered by Article 2.

(2)  The foregoing shall not apply to offenses committed after the extradition.

### ARTICLE 13

(1) A requested State upon receiving two or more requests for the extradition of the same person either for the same offense, or for different offenses, shall determine to which of the requesting States it will extradite the person sought.

(2) Among the matters which the requested State may take into consideration are the possibility of a later extradition between the requesting States, the seriousness of each offense, the place where the offense was committed, the dates upon which the requests were received and the provisions of any extradition agreements between the requested State and the other requesting State or States.

### ARTICLE 14

(1) The requested State shall promptly communicate to the requesting State through the diplomatic channel the decision on the request for extradition.

(2) If a warrant or order for the extradition of a person sought has been issued by the competent authority and he is not removed from the territory of the requested State within such time as may be prescribed by the laws of that State, he may be set at liberty and the requested State may subsequently refuse to extradite that person for the same offense.

### ARTICLE 15

(1) To the extent permitted under the law of the requested State and subject to the rights of third parties, which shall be duly respected, all articles acquired as a result of the offense or which may be required as evidence shall, if found, be surrendered to the requesting State if extradition is granted.

(2) Subject to the qualifications of paragraph (1) of this Article, the above-mentioned articles shall be returned to the requesting State even if the extradition, having been agreed to, cannot be carried out owing to the death or escape of the person sought.

## ARTICLE 16

(1) The right to transport through the territory of one of the Contracting Parties a person surrendered to the other Contracting Party by a third State shall be granted on request made through the diplomatic channel, provided that conditions are present which would warrant extradition of such person by the State of transit and reasons of public order are not opposed to the transit.

(2) The Party to which the person has been extradited shall reimburse the Party through whose territory such person is transported for any expenses incurred by the latter in connection with such transportation.

## ARTICLE 17

(1) Expenses related to the transportation of the person sought to the requesting State shall be paid by the requesting State. The appropriate legal officers of the State in which the extradition proceedings take place shall, by all legal means within their power, assist the requesting State before the respective judges and magistrates.

(2)  No pecuniary claim, arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty, shall be made by the requested 'State against the requesting State.

### ARTICLE 18

(1)  This Treaty shall be ratified and the instruments of ratification shall be exchanged at Ottawa as soon as possible.

(2)  This Treaty shall terminate and replace any extradition agreements and provisions on extradition in any other agreement in force between the United States and Canada; except that the crimes listed in such agreements and committed prior to entry into force of this Treaty shall be subject to extradition pursuant to the provisions of such agreements.

(3)  This Treaty shall enter into force upon the exchange of ratifications.[1] It may be terminated by either Contracting Party giving notice of termination to the other Contracting Party at any time and the termination shall be effective six months after the date of receipt of such notice.

---

[1] Mar. 22, 1976.

14

IN WITNESS WHEREOF the undersigned, being duly authorized
thereto by their respective Governments, have signed this
Treaty.

DONE in duplicate, in the English and French languages,
each language version being equally authentic, at Washington
this third day of December, one thousand nine hundred seventy
one.

FOR THE UNITED STATES OF AMERICA:

William P. Rogers [1]

FOR CANADA:

Mitchell Sharp [2]

---
[1] William P. Rogers
[2] Mitchell Sharp

## SCHEDULE

1.  Murder; assault with intent to commit murder.

2.  Manslaughter.

3.  Wounding; maiming; or assault occasioning bodily harm.

4.  Unlawful throwing or application of any corrosive substances at or upon the person of another.

5.  Rape; indecent assault.

6.  Unlawful sexual acts with or upon children under the age specified by the laws of both the requesting and requested States.

7.  Willful nonsupport or willful abandonment of a minor when such minor is or is likely to be injured or his life is or is likely to be endangered.

8.  Kidnapping; child stealing; abduction; false imprisonment.

9.  Robbery; assault with intent to steal.

10.  Burglary; housebreaking.

11.  Larceny, theft or embezzlement.

12.  Obtaining property, money or valuable securities by false pretenses or by threat of force or by defrauding the public or any person by deceit or falsehood or other fraudulent means, whether such deceit or falsehood or any fraudulent means would or would not amount to a false pretense.

13.  Bribery, including soliciting, offering and accepting.

14.  Extortion.

TIAS 8237

15. Receiving any money, valuable securities or other property knowing the same to have been unlawfully obtained.

16. Fraud by a banker, agent, or by a director or officer of any company.

17. Offenses against the laws relating to counterfeiting or forgery.

18. Perjury in any proceeding whatsoever.

19. Making a false affidavit or statutory declaration for any extrajudicial purpose.

20. Arson.

21. Any act done with intent to endanger the safety of any person travelling upon a railway, or in any aircraft or vessel or other means of transportation.

22. Piracy, by statute or by law of nations; mutiny or revolt on board a vessel against the authority of the captain or commander of such vessel.

23. Any unlawful seizure or exercise of control of an aircraft, by force or violence or threat of force or violence, or by any other form of intimidation, on board such aircraft.

24. Willful injury to property.

25. Offenses against the bankruptcy laws.

26. Offenses against the laws relating to the traffic in, production, manufacture, or importation of narcotic drugs, Cannabis sativa L., hallucinogenic drugs, amphetamines, barbiturates, cocaine and its derivatives.

27.  Use of the mails or other means of communication in connection with schemes devised or intended to deceive or defraud the public or for the purpose of obtaining money or property by false pretenses.

28.  Offenses against federal laws relating to the sale or purchase of securities.

29.  Making or having in possession any explosive substance with intent to endanger life, or to cause severe damage to property.

30.  Obstructing the course of justice in a judicial proceeding, existing or proposed, by:

    a)  dissuading or attempting to dissuade a person by threats, bribes, or other corrupt means from giving evidence;

    b)  influencing or attempting to influence by threat, bribes, or other corrupt means a person in his conduct as a juror; or

    c)  accepting a bribe or other corrupt consideration to abstain from giving evidence or to do or to refrain from doing anything as a juror.

## [AMENDING AGREEMENT]

*The Canadian Ambassador to the Secretary of State*



Canadian Embassy          Ambassade du Canada

Washington, D.C.

June 28, 1974

No. 126

Excellency,

I have the honour to refer to the Treaty on Extra-
dition between the Government of Canada and the Government
of the United States signed at Washington on December 3,
1971 and to subsequent discussions between representatives
of our two governments concerning the amendment of the said
Treaty.

Further to those discussions I now have the honour
to propose that the said Treaty be amended as follows:

(1) That Article 4(2)(i) of the Treaty shall
be amended to read: "A kidnapping, murder,
or other assault against the life or physical
integrity of a person to whom a Contracting
Party has the duty according to international
law to give special protection, or any attempt
or conspiracy to commit, or being a party to

The Honourable
   Henry A. Kissinger,
   Secretary of State,
      Washington, D.C.
         20520

the commission of, such an offence with
respect to any such person."

(7) That clause 76 of the Schedule annexed to
the Treaty shall be amended to read:
"Offences against the laws relating to
the traffic in, production, manufacture or
importation of drugs listed in Schedule I
to the Single Convention on Narcotic Drugs
of March 30, 1961[1] and of drugs listed in
Schedules I, II and III to the Convention
on Psychotropic Substances of February 21,
1971."

If this proposal meets with the approval of your
government, I have the further honour to propose that
this Note, which is authentic in English and in French,
and your reply shall constitute an amendment to the Treaty
on Extradition between Canada and the United States referred
to above, which shall come into force on the date of the
entry into force of the said Treaty and which shall be con-
sidered an integral part of the said Treaty.

Accept, Excellency, the assurances of my highest
consideration.

M. Cadieux,
Ambassador.

[1] TIAS 6298; 18 UST 1559.

TIAS 8237

*The Secretary of State to the Canadian Ambassador*

DEPARTMENT OF STATE
WASHINGTON

July 9, 1974

Excellency:

I have the honor to refer to your note of
June 28, 1974, in the English and French languages,
relating to amendment of the Treaty on Extradition
between the United States of America and Canada,
signed at Washington December 3, 1971.

On behalf of the United States of America I
confirm the understanding set forth therein and
consider that your note and this reply constitute
an agreement between the United States and Canada on
this matter.

Accept, Excellency, the renewed assurances of
my highest consideration.

For the Secretary of State:

Acting Secretary

*Joseph John Sisco*

His Excellency

Marcel Cadieux,

Ambassador of Canada.