IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

In Re Extradition of                                    CASE NO. 11-MJ-0310 KJN
James William Robertson.

ORDER

_____/

       The United States, on behalf of the Government of Canada, has requested the extradition

of James William Robertson, a dual citizen of both Canada and the United States.  (See Government Ex.

1.)  The requesting country seeks Robertson's extradition to serve the remainder of a criminal sentence

imposed upon him in Canada and to stand trial on three new charges of violating the conditions of a

long-term supervision order imposed against him in that country.  The request for extradition is made by

the United States on behalf of Canada pursuant to the December 3, 1971 Extradition Treaty Between the

United States of America and Canada which entered into force on March 22, 1976, as amended by

subsequent Protocols.  27 UST 983, TIAS 8237 (hereinafter "Treaty"); Government Ex. 1 (Doc. No. 40)

- U.S. Department of State Certification dated Oct. 28, 2011, Attachments.

       Below the court will review the background relating to the request for extradition, the

basis for that request, and the legal standards controlling this court's consideration of the request for

certification of extradition.  In the end, however, the parties dispute only the following two issues

1

material to the pending request for extradition:  (1) has Robertson completed serving the criminal

sentence imposed in his case by the Canadian court so that he may not be extradited for the requested

purpose of completing service of his sentence?[1]; and (2) are the new charges brought against him in

Canada for violating the terms of his Long Term Supervision extraditable offenses under the governing

Treaty or do they fail as a basis for extradition under the principle of dual criminality because they are

not criminal offenses for which he could be prosecuted under the laws of the United States?

For the reasons set forth below, the court finds that the certificate of extradition should be

granted only to the extent it is based on Canada's request that Robertson be returned to complete the

unserved portion of his sentence.

## BACKGROUND

Following his second trial[2] on November 7, 2003, James William Robertson, a dual

citizen of Canada and the United States, was found guilty by the Honorable Madam Justice Kilpatrick of

the Supreme Court of British Columbia on several "counts of various historical offences ranging from

common assault to rape" spanning a twenty-three year period from 1965 to 1988.  (Government Ex. 2

(Doc. No. 34), Ex. F at 1.)  Thereafter, on January 20, 2005, Robertson was sentenced on the following

offenses: (1) sexual assault in violation of the Criminal Code of Canada ("CCC") § 246.1; (2) two

counts of indecent assault of a male person upon another male person in violation of CCC § 156; (3) two

counts of indecent assault upon a female in violation of CCC § 141(1); (4) three counts of indecent

assault upon a female in violation of CCC § 149(1); (5) rape in violation of CCC § 136(a); (6) rape in

violation of CCC § 144; (7) common assault in violation of CCC § 231(1); and (8) common assault in

---

[1] This question turns on the issue of whether the Long Term Supervision Order that was issued in Canada was an element of the criminal sentence imposed in Robertson's case or was a separate, administrative order.

[2] Robertson was originally found guilty of eleven counts of a twenty-seven count indictment in September of 1998.  (Government Ex. 2 (Doc. No. 34), Ex. F at 1.)  However, in October of 2001, the Supreme Court of Canada overturned those convictions and ordered a new trial.  (Id., Ex. F at 2.) Robertson's retrial was held between September 15 and October 3, 2003, and resulted in his conviction on the charges noted above on November 7, 2003.  (Id.)  From the time of his arrest in Canada on February 18, 1997, through both trials and the time of his eventual sentencing, Robertson remained in custody.  (Id.)

1   violation of CCC § 245(1) to sixteen years imprisonment.  (Id. at 1-4; see also Government Ex. 2 (Doc.

2   No. 35), Ex. G.)[3]  After being credited for eleven years time served in custody while awaiting trial,

3   Robertson effectively was sentenced to five years of additional imprisonment.  In addition, a Long-Term

4   Offender designation was entered with respect to count one by Justice Kirkpatrick requiring Robertson

5   "to be placed on supervision in the community for a period of ten years following his release."

6   (Government Ex. 2 (Doc. No. 35), Ex. G.)[4]  The requesting country alleges that the Long-Term Offender

7   designation in Robertson's case was upheld on appeal.  (Complaint For Provisional Arrest (Doc. No. 1)

8   at 4.)

9       Following his sentencing, Robertson was paroled from prison in Canada after serving an

10  additional twenty-two months in custody.  Thereafter, following his service of eighteen months on

11  parole, Robertson was transitioned to "Statutory Release" for the final twenty months of his additional

12  five-year sentence, which was completed on January 19, 2010.  On that date, a Long Term Supervision

13  Certificate was issued to Robertson by the Chief of Sentence Management at the William Head

14  Institution advising Robertson of the conditions of his LTSO[5], the identity and contact information for

15  his parole supervisor and an advisement that his failure or refusal to abide by the conditions of the LTSO

16  was an offense under the CCC.  (Government Ex. 2 (Doc. No. 35), Ex. I.)

17      In March of 2010, contrary to the conditions of his Long Term Supervision, Robertson

18  moved from his sister's residence in Richmond, British Columbia without advising his parole

19  supervisor.  In addition, he ceased reporting to that officer.  Accordingly, on March 31, 2010, a Federal

20  Warrant of Apprehension was issued by the Correctional Services Canada due to Robertson's failure to

21  comply with his required frequency of contact during the term of his Long Term Supervision, in

22

23      [3] It appears from the documents submitted by the requesting country that Robertson was sentenced on only twelve counts.  (See Government Ex. 2 (Doc. Nos. 34 & 35), Exs. F & G.)

24      [4] This has been referred to by the parties as the Long Term Supervision Order ("LTSO").

25      [5] The terms of the LTSO required Robertson to report to a parole supervisor as directed, advise that officer of his residential address and thereafter report immediately any change of address, and to

26  "remain at all times in Canada within the territorial boundaries fixed by your parole supervisor." (Government Ex. 2 (Doc. No. 35), Ex. I at 4.)

1    violation of CCC § 753.3(1).  In April of 2010, authorities determined that Robertson had entered the

2    United States and was living in South Lake Tahoe, California.  Thereafter, on September 23, 2010,

3    Robertson was indicted in Canada on three counts of violating CCC § 753.3(1).[6]

4              Not until September 29, 2011, did this court issue an order authorizing the provisional

5    arrest of  Robertson pursuant to 18 U.S.C. § 3184 based upon a complaint filed with a view towards

6    extradition filed that same day.  (Doc. Nos. 1 & 2.)  Robertson was arrested by U.S. Marshals on

7    September 30, 2011.  On October 3, 2011, Robertson made his initial appearance before United States

8    Magistrate Judge Kendall J. Newman, contested his extradition and removal to Canada and was ordered

9    detained.[7]  (Doc. Nos. 8 & 9.)

10             On November 14, 2011, the government filed a memorandum in support of extradition.

11   (Doc. No. 17.)  On November 15, 2011, counsel on behalf of Robertson filed an opposition.  (Doc. No.

12   18.)  The parties appeared before the undersigned for extradition hearing on November 16, 2011.  See

13   Local Rule 302(b)(8) and 18 U.S.C. § 3184 (authorizing Magistrate Judges to conduct extradition

14   proceedings under 18 U.S.C. § 3181, et seq.)  At that initial hearing the assigned Assistant United States

15   /////

16   /////

17

18       [6]  As part of his sentence and pursuant to CCC § 490.012, Robertson was also ordered to comply
     with the Sex Offender Registration Act.  The requesting country initially alleged that he had never
19   registered as a sex offender as required and, accordingly, had also been charged in Canada under CCC s.
     490.031 with failing to register as required.  (See Doc. No. 17 at 7-8; Government Ex. 2 (Doc. No. 34),
20   Attached Affidavit of Law at 6.)  However, the requesting country later indicated that it was not seeking
     Robertson's extradition on the failure to register charge because under Canadian law that offense was
21   punishable by only up to six months imprisonment and thus it was not an extraditable offense under the
     governing Treaty.  Still later, on August 27, 2012, the requesting country corrected the statement made
22   in its initial affidavit of law and reported that it had now advised United States officials acting on its
     behalf that, in fact, Robertson had reported annually as required from 2007 through 2010 and that it was
23   only after the LTSO went into effect that he had failed to report, resulting in the issuance of a warrant for
     his arrest on May 31, 2011, due to his failure to register.  (See Doc. No. 38.)  While extradition is not
24   being sought on the failure to register charge, this is one instance in which the position being taken by
     the requesting country in these proceedings has been, at best, unclear.

25
         [7]  Counsel for Mr. Robertson later moved for bail review and argued for his release pending these
26   proceedings.  (Doc. No. 30.)  On January 18, 2012, that motion was denied by the undersigned and he
     remains in custody.

1  Attorney offered into evidence Government Exhibits 1 and 2[8] in support of the extradition request.  (Id.)

2  Without objection, those exhibits were admitted into evidence.  (Id.)  Following oral argument, the

3  government was ordered to file a reply to Robertson's opposition to extradition and a further extradition

4  hearing was scheduled.  (Id.)[9]  On November 30, 2011, the government filed its reply as ordered.  (Doc.

5  No. 25.)  Counsel for Robertson filed a sur-reply in opposition to extradition on December 8, 2011.

6  (Doc. No. 26.)  The parties appeared before the court on December 16, 2011, for further hearing on the

7  extradition request.  Oral argument was heard and the matter taken under submission.

8  **ARGUMENTS OF THE PARTIES**

9  The government asserts three theories in support of Robertson's extradition to Canada

10  under the applicable treaty:  (1) that the LTSO is part of the sentence imposed on Robertson in Canada

11  and he can be extradited to finish serving that sentence; (2) that Robertson's violation of the conditions

12  of his LTSO, if committed in the United States could be prosecuted as criminal contempt pursuant to 18

13  U.S.C. § 401(3) and thus the dual criminality requirement is satisfied and he may be extradited to face

14  the three new charges brought against him in Canada for violating CCC § 753.3(1); and (3) that

15  Robertson's failure to abide by the conditions of the LTSO is also analogous to a failure to register as a

16  sex offender or update that registration as required under the Sex Offender Registration and Notification

17  Act ("SORNA"), 42 U.S.C. § 16901, et seq. which carries a maximum term of imprisonment of up to

18  ten years under 18 U.S.C. § 2250 and thus dual criminality is satisfied and he may be extradited to face

19  the three new charges brought against him in Canada for violating CCC § 753.3(1).

20  /////

---

22  [8]  Government Exhibit 1 (Doc. No. 40) is a certification from the U.S. Department of State and
    contains the following:  the Declaration of Patricia E. McDonough, Attorney Advisor in the Office of the
23  Legal Advisor, Department of State explaining the basis for the extradition request and declaring that the
    documents submitted by the Government of Canada in support of its request were certified by the
24  principal consular officer of the United States in Canada; the Canadian extradition request; and the
    Extradition Treaty Between the United States and Canada and Protocols Amending that Treaty.
    Government Exhibit 2 consists of the certificate of authentication regarding the documentary evidence,
25  attached thereto, submitted by Canada in support of its request for Robertson's extradition.

26  [9]  Thereafter, the further extradition hearing was continued three times either at the request of a
    party or upon the stipulation of the parties.  (Doc. Nos. 21, 24 & 27.)

1   Robertson disputes the validity of each of the governments' asserted theories for

2   extradition, arguing that:  (1) the LTSO is not part of his criminal sentence under Canadian law and

3   therefore cannot serve as the basis for his extradition under the applicable treaty; (2) that the new charges

4   brought against him in Canadian are not substantially analogous to the charge of contempt of court in the

5   United States and the dual criminality requirement prevents his extradition based on those charges; and

6   (3) the new charges brought against him in Canada for violating a long-term supervision order are not

7   analogous to charges brought in the United States under SORNA for failing to register as a sex offender

8   and therefore he cannot be extradited based on those new charges given the dual criminality requirement.

9   Below, after setting forth the applicable legal standards, the court will address the legal

10  issues presented by this extradition request.

11  **ANALYSIS**

12  I.   Legal Standards

13  "'Extradition from the United States is a diplomatic process' that is initiated when a

14  foreign nation requests extradition of an individual from the State Department."  Manta v. Chertoff, 518

15  F.3d 1134, 1140 (9th Cir. 2008) (quoting Prasoprat v. Benov, 421 F.3d 1009, 1012 (9th Cir. 2005), cert.

16  denied 546 U.S. 1171 (2006).  See also Vo v. Benov, 447 F.3d 1235, 1237 (9th Cir.) ("[E]xtradition is a

17  matter of foreign policy entirely within the discretion of the executive branch, except to the extent that

18  the statute interposes a judicial function.") (quoting Lopez-Smith v. Hood, 121 F.3d 1322, 1326 (9th Cir.

19  1997)), cert. denied 549 U.S. 935 (2006).  In this regard, extradition from the United States to a

20  requesting country is governed by 18 U.S.C. § 3181 et seq.  When a foreign fugitive is found in the

21  United States, the foreign state may submit a formal request for extradition, through diplomatic

22  channels, with certified documentation.  An extradition hearing is then held, at which evidence may be

23  submitted.  The purpose of the extradition hearing is to determine whether a person arrested pursuant to

24  a complaint in the United States on behalf of a requesting government is subject to surrender to the

25  requesting country under the terms of the applicable treaty and the relevant law.  See 18 U.S.C. § 3184.

26  If, after the hearing, the judge determines that extradition is warranted, the judge certifies that decision

and evidence in support thereof to the Secretary of State.  Blaxland v. Commonwealth Dir. of Pub.
Prosecutions, 323 F.3d 1198, 1208 (9th Cir. 2003).  However, the final decision of whether to extradite
is reserved to the Secretary of State.   Id.; see also In re Extradition of Garcia, 188 F. Supp.2d 921, 924
(N.D. Ill. 2002).

Here, in order to establish that the requested extradition of Robertson is warranted, the
United States on behalf of Canada must show that the following requirements are met:  (1) that an
extradition treaty between the United States and Canada is in full force and effect and that Robertson is
the individual sought by Canada; (2) that the extradition magistrate has jurisdiction over Robertson; (3)
that Robertson may be extradited on the offenses with which he is charged under the terms of the treaty;
(4) that there is probable cause to believe Robertson committed the offenses upon which extradition is
sought; (5) that the United States has submitted the required documents on behalf of the Government of
Canada and those documents have been properly authenticated; and (6) there are no provisions of the
treaty which bar the extradition for any of the charges upon which extradition is sought.  See generally
Fernandez v. Phillips, 268 U.S. 311, 312 (1925); Manta, 518 F.3d at 1140; Prasoprat, 421 F.3d at 1113;
Barapind v. Reno, 225 F.3d 1100, 1105 (9th Cir. 2000); Zanazanian v. United States, 729 F.2d 624, 625-
26 (9th Cir. 1984); see also In re Extradition of Ortiz, 444 F. Supp.2d 876, 882 (N.D. Ill. 2006).[10]

Generally, extradition treaties are to be liberally construed so as "to effect the apparent
intention of the parties to secure equality and reciprocity between them."  Factor v. Laubenheimer, 290
U.S. 276, 294 (1933).  See also Valentine v. U.S. ex rel. Neidercker, 299 U.S. 5, 10 (1936) ("Extradition
treaties are to be liberally construed so as to effect their purpose, that is, to surrender fugitives for trial
for their alleged offenses."); Bingham v. Bradley, 241 U.S. 511, 517 (1916) (affirming order requiring
extradition of the subject to Canada where "[a]ll objections savor of technicality"); Wright v. Henkel,
190 U.S. 40, 57 (1903) ("The ordinary technicalities of criminal proceedings are applicable to

---

[10]  All of these formulations of what must be established in support of an extradition request vary
slightly, but are essentially the same.  That is the case whether they are addressing the extradition
magistrate's consideration of a request or the habeas court's review of the extradition magistrate's
decision.

1    proceedings in extradition only to a limited extent."); Shapiro v. Ferrandina, 478 F.2d 894, 904 (2d Cir.

2    1973) ("While again applauding the ingenuity of the argument, we reject it as 'savor[ing] of technicality,

3    [citation omitted], which is peculiarly inappropriate in dealings with a foreign nation."); In Re

4    Extradition of Ortiz, 444 F. Supp.2d at 883.

5           As noted above, in this case the only points of dispute between the parties are whether

6    Robertson may be extradited on the new offenses with which he is charged in Canada for violating the

7    terms of his LTSO and also to serve an allegedly partially unfulfilled sentence under the terms of the

8    applicable extradition treaty.  There are, however, several aspects to these disputed issues.

9    II.    Dual Criminality

10          The notion of dual criminality - the requirement that the offense for which extradition is

11   sought by the requesting country "is generally recognized as criminal in both countries" - is long

12   recognized, well-established and is common in all extradition treaties.  Factor, 290 U.S. at 300; Clarey v.

13   Gregg, 138 F.3d 764, 765 (9th Cir.) ("'Dual criminality requires that an accused be extradited only if the

14   alleged criminal conduct is considered criminal under the laws of both the surrendering and requesting

15   nations.'") (quoting United States v. Saccoccia, 18 F.3d 795, 800 n. 6 (9th Cir. 1994)), cert. denied 525

16   U.S. 853 (1998).  Here, Article 2 of the extradition treaty between the United States and Canada

17   specifically incorporates the dual criminality requirement, providing as follows:

18              Extradition shall be granted for conduct which constitutes an offense
                punishable by the laws of both Contracting Parties by imprisonment or
19              other form of detention for a term exceeding one year or any greater punishment.

20   (Treaty (Govt. Exhibit 1 (Doc. No. 40) at sequential p. 11), Article 2.)

21          The principle of dual criminality "does not require that the name by which the crime is

22   described in the two countries shall be the same; nor that the scope of the liability shall be coextensive,

23   or, in other respects, the same in the two countries.  It is enough if the particular act charged is criminal

24   in both jurisdictions." Collins v. Loisel, 259 U.S. 309, 312 (1922).  Accordingly, each element of the

25   offense upon which the requesting country seeks extradition need not be identical to the elements of a

26   similar offense in the United States, so long as the conduct involved is criminal in both countries.  Man-

1   Seok Choe v. Torres, 525 F.3d 733, 737 (9th Cir. 2008) ("Choe's conduct [bribery of a public official],

2   if committed in the United States would be punishable under several statutes . . ."), cert. denied 555 U.S.

3   1139 (2009); Clarey, 138 F.3d at 766 ("The primary focus of dual criminality has always been on the

4   conduct charged; the elements of the analogous offense need not be identical."); Oen Yin-Choy v.

5   Robinson, 858 F.2d 1400, 1404 (9th Cir. 1988) ("[D]ual criminality exists if the 'essential character' of

6   the acts criminalized by the law of each country are the same and if the laws are 'substantially

7   analogous.'"); Emami v. U.S. District Court, 834 F.2d 1444, 1450 (9th Cir. 1987) ("[A]ll the principle of

8   dual criminality requires is that the particular acts alleged constitute a crime in both jurisdictions."); In re

9   Russell, 789 F.2d 801, 803 (9th Cir.1986) ("[T]o satisfy the 'dual criminality' requirement, . . . [i]t is

10   enough that the conduct involved is criminal in both countries." ); see also Hu Yau-Leung v. Soscia, 649

11   F.2d 914, 918 (2d Cir. 1981) ("This is consistent with the proper 'double criminality' inquiry:  if the

12   individual had committed the same acts in the United States, would a crime have been committed and

13   would it have been a felony?")

14           Below, the court will apply these legal principles in considering Robertson's contention

15   that the governing treaty does not provide for his extradition because: (1) he has completed serving his

16   criminal sentence imposed by the Canadian courts and there is no criminal sentence for him to complete

17   serving; and (2) the new charges brought against him in Canada for violating the terms of his LTSO have

18   no analogy under the laws of the United States and therefore fail to satisfy the dual criminality

19   requirement.

20   III.    Analysis

21        A.    Has Robertson Served His Sentence Or Is He Extraditable To Complete Serving
              His LTSO Term Under Article 9(4) of the Treaty?

22

23           As noted above, the United States on behalf of Canada first seeks Robertson's extradition

24   on the grounds that he must be returned under the governing Treaty to serve the nine years, nine months

25   and eighteen days remaining under the LTSO that was imposed by the Canadian courts as part of his

26   /////

1  criminal sentence and from which he has absconded.  (Government Mem. in Supp. of Extradition (Doc.

2  17) at 2; Government Reply (Doc. No. 22) at 13-19.)

3           Under Article 1 of the governing Treaty, the United States and Canada have agreed "to

4  extradite to the other, in the circumstances and subject to the conditions described in this Treaty, persons

5  found in its territory who have been charged with, or convicted of, any of the offenses covered by Article

6  2 of this Treaty committed within the territory of the other, . . . .  (Treaty, Government Ex. 1 (Doc. No.

7  40) at 17).[11]   The Treaty also provides in relevant part:

8           When the request relates to a person already convicted, it must be
          accompanied by the judgment of conviction and sentence passed against
9           him in the territory of the requesting State, by a statement showing how
          much of the sentence has not been served, and by evidence proving that
10           the person requested is the person to whom the sentence refers.

11  (Id. at 21, Article 9(4).)

12           The United States, on behalf of Canada, argues that the LTSO was part of the criminal

13  sentence imposed by the Canadian court in Robertson's case.  In support of this contention the

14  government first points to the Reasons for the Judgment given and entered by Madam Justice

15  Kirkpatrick.  (See Government Ex. 2 (Doc. Nos. 34 & 35), Ex. F.)  There, the government argues, the

16  sentencing judge in analyzing whether Robertson met the criteria under Canadian law to be categorized

17  as a long term offender found the predicates that he had engaged in serious criminal conduct calling for

18  two or more years imprisonment and that there was a substantial risk that he would re-offend.  (Id. at ¶¶

19  120-21.)  The sentencing court found that there was a reasonable possibility of controlling the risk to the

20  community only if Robertson was subject to long-term supervision following his release from

21  confinement.  (Id. at ¶ 122.)  In fact, the government points out, Justice Kirkpatrick specifically stated as

22  follows:

23           Accordingly, pursuant to s. 753.1(a), I sentence [Robertson] to three years
          imprisonment on Count I and, pursuant to s. 759.1(b) order that
24           [Robertson] be supervised in the community for a period of ten years
          following his release in accordance with s. 753.2 of the Criminal Code and

25

26  _____

   [11]  Article 2 of the Treaty sets out the dual criminality requirement that the charged conduct must
constitute an offense punishable by the laws of both countries by imprisonment for more than one year.

1    the Corrections and Conditional Release Act, S.C. 1992, c. 20.

2  (Id. at ¶ 123) (emphasis added).

3    Second, the government points to the language used by the Court of Appeal for British

4  Columbia in rejecting Robertson's appeal in which he challenged both the finding that he was a long-

5  term offender and the trial judge's imposition of a ten-year period of long term supervision following his

6  term of imprisonment.  (See Government Ex. 2 (Doc. No. 35), Ex. H.)  Specifically, the government

7  points to the following statement of the Canadian appellate court as indicating that Robertson's LTSO

8  was part of his sentence:

> The trial judge found the appellant to be a long-term offender under s.
> 753.1 of the *Criminal Code.*  She imposed a sentence of three years on
> count 1, to be followed by ten years' supervision in the community.  On
> the other three counts, she imposed a combination of concurrent and
> consecutive sentences, with the total period of incarceration on all counts
> coming to 5 years after taking into account double credit for pre-trial time
> in custody.

* * *

> On this appeal, the appellant sought to tender evidence of his progress
> since he was sentenced.  In my view, it would not be appropriate for this
> Court to consider that evidence on this appeal.  The question for this Court
> is whether the sentence imposed was an appropriate one, not whether
> subsequent progress justifies a modification of the community supervision
> provisions of it.  The long-term offender regime contemplates, in s.
> 753.2(3), an application to the Supreme Court by the offender where he
> can demonstrate that he no longer poses a danger to the community.  In my
> view, that is the preferable forum for the appellant's new evidence to be
> canvassed.  The trial court's procedures are better suited to the evaluation
> of the new evidence, and the *Criminal Code* provisions specifically
> provide for the decisions of this nature being made in that court.  If the
> appellant wishes to pursue his arguments that his progress makes the long-
> term community supervision order unnecessary, he should do so by way of
> an application under s. 753.2.

22  (Id. at p.5, ¶ 11 and p. 12, ¶ 46) (emphasis added).

23    The government contends that the Court of Appeal for British Columbia's statement

24  elsewhere in its opinion that the long-term supervision was not intended to be "penal" in nature should

25  not be taken as an indication that the LTSO was not part of Robertson's sentence.  The government

26  contends that Robertson's argument to the contrary takes the appellate court's statement out of context.

11

1   Moreover, the government asserts that Robertson's argument based on the court's statement that the long

2   term supervision is intended to protect the community and is not  "penal" in nature, is the sort of

3   technical defense against extradition which has long been rejected by the federal courts as inappropriate

4   in dealing with foreign nations.  Finally, the government argues that to adopt Robertson's argument in

5   this regard would be to intrude on the requesting country's oversight of its own criminal justice system.

6           Third, the government argues that s.753.1(3) of the Criminal Code of Canada states on its

7   face that the sentence for one found to be a long term offender such as Robertson, includes both a term

8   of imprisonment and order of long-term supervision for up to ten years.  (See Government Ex. 2 (Doc.

9   No. 35), Ex. G (Warrant of Committal Upon Conviction).)

10          Fourth, the government points to the affidavit of Catherine Anne Murray, Q.C., the

11   Crown Prosecutor for the Province of British Columbia, Canada.  (Government Ex. 2 (Doc. No. 34),

12   Attached Affidavit of Law.)  Therein, the Canadian prosecutor states as follows:

13           A Long-Term Supervision Order ("LTSO") is imposed after a finding that
         the offender is a Long-Term Offender ("LTO").  An LTO pursuant to
14           section 753.1 of the Criminal Code of Canada ("Criminal Code"), is an
         extraordinary sentence, that is imposed only when the court, after finding
15           the offender guilty of a designated sexual offense, is satisfied that there is
         a substantial risk that the offender will reoffend, but is also satisfied that
16           there is a reasonable possibility of eventual control of the risk in the
         community.  If the offender is found to be an [sic] LTO, the court imposes
17           a fixed sentence of two or more years and orders that the offender be
         supervised in the community for a further period not exceeding ten years.
18           The supervision period has conditions that the offender must comply with
         and is supervised by parole officers employed by Correctional Services
19           Canada.

20   (Id. at p. 2, ¶6.)[12]

21

_____

22       [12]  Canadian Prosecutor Murray later submitted a second affidavit advancing many of the
   arguments set forth above, pointing out language used in the applicable Canadian statutes and by the
23   Supreme Court of Canada indicating that the LTSO is part of the sentence Robertson received and
   concluding:

24
         The order for long-term supervision is "supervised in the community in
25           accordance with" Canada's Corrections and Conditional Release Act, S.C.
         1992, c.20 as amended.  However, it is imposed at the time of sentencing
26           and in my respectful submission, the order forms an integral part of the
         overall sentencing process for persons who are convicted in Canada of

1    Counsel on behalf of Robertson counters, arguing that he completed serving his criminal

2    sentence in Canada in 2010.  In this regard, Robertson points to the following language employed by the

3    Court of Appeal for British Columbia in addressing his LTSO:

4         The next question is whether the trial judge erred in imposing the
     maximum period of community supervision permitted by the statute - ten

5         years.  In assessing this question, it is important to recognize that the
     supervision period is not intended to be "penal" in the sense of being

6         designed to achieve goals of deterrence or denunciation.  The fixed
     sentence imposed on the offender is the means by which penal objectives

7         are met.  [citation omitted]  Rather, the supervision period is intended to
     accomplish the goal of preventing future crimes.

8

9    (Government Ex. 2 (Doc. No. 35), Ex. H (Regina v.  J.W.R., 2010 BCCA 66) at p. 12, ¶ 43.)  Robertson

10   contends that other provisions of Canadian law make clear that there is a distinction between a criminal

11   sentence, statutory release which is part of the sentence and long term supervision which commences by

12   separate order only after one's criminal sentence is served.  See Criminal Code of Canada s. 753.1(3)

13   ("If the court finds an offender to be a long-term offender, it shall (a) impose a sentence [of

14   imprisonment]; and (b) order that the offender be subject to long term supervision for a period that does

15   not exceed 10 years.")  Robertson refers this court to the following language from decisions by the

16   Supreme Court of Canada and other courts of that country in support of his contention that the LTSO is

17

18        serious sexual offences and met the criteria for long-tem offender
     designations . . . .  The term of imprisonment and the order for long-term

19        supervision formed part of one sentencing transaction, although
     individually they constitute distinct forms of legal sanction.

20                                   * * *

21        It is submitted that the long-term supervision order made against
     ROBERTSON was made in furtherance of a recognized sentencing goal

22        [contributing to the maintenance of a safe society] and should be viewed
     as a "sentence" for the purpose of extradition.

23

24   (Doc. No. 22-1 at p.2, ¶5 and p.4, ¶ 10.)  As noted above, still later a notice to correct with a corrected
     affidavit from prosecutor Murray was filed by the government.  (Doc. No. 38-1.)  That correction related
     to the erroneous claim that Robertson had never reported to the sex offender registration center as

25   required when, in fact he had reported annually from 2007 to 2010 and failed to report thereafter.  (Id.)
     Counsel for Robertson contends that all of these declarations of the Canadian prosecutor should be

26   viewed merely as the arguments of an advocate and not as authority regarding the interpretation of
     Canadian law in this area.

not part of his criminal sentence and he cannot be extradited under the applicable treaty to complete

serving the ten year term of supervision under that order.

>            This appeal also raises the issue of the relationship between
> sentencing and the procedure for finding an offender to be a long-term
> offender.  When the Crown applies to have an offender found to be a long-
> term offender, must the judge, in determining the length of the term of
> imprisonment, take the subsequent period of community supervision into
> account?  I do not think so.  In my view, a distinction must be made
> between sentencing *per se* and the procedure for imposing a period of
> post-sentence supervision.
>
>                                    * * *
>
>            This Court has held that the procedure for finding an offender to be
> a *dangerous* offender forms part of the sentencing process [citations
> omitted].  Can it be said that the procedure for finding an offender to be a
> *long-term* offender also forms part of the sentencing process?  Obviously,
> since the sentencing judge is the same judge who would make the order so
> finding.  However, the similarities between that finding and a sentencing
> proceeding end there.
>
>                                    * * *
>
>            Nevertheless, the judge determining the length of an offender's
> sentence of imprisonment will also receive the application to find the
> offender to be a long-term offender before passing sentence.  As a result,
> the judge will quite likely tend to consider both decisions at the same time.
> He or she may accordingly find it difficult to observe the conceptual
> distinction between the two decisions.  Despite these practical difficulties,
> it is important to remain faithful to the distinction between sentencing and
> the imposition of a supervision period.  A judge who confuses these two
> processes risks straying from the normative principles and the objectives
> of sentencing.  A judge who does so would also neglect the specific
> objectives of the procedure for finding an offender to be a long-term
> offender, which requires application of different principles.  Parliament
> intended that the judge determine the appropriate sentence first.  After
> doing so, the judge is to ask, in light of Parliament's objective of
> protecting the public, whether a period of supervision is warranted.  The
> period of community supervision cannot therefore be equated with a new
> period of deprivation of liberty consecutive to the one resulting from the
> sentence.

R. v. L.M., 2008 SCC 31, at ¶¶ 38, 45, 49 (Sup. Ct. Canada 2008) (Doc. No. 29 at 47, 52 & 53-54).  See

also McMurray v. National Parole Board, 2004 FC 462, at ¶25 (Fed. Ct. of Canada 2004) (Doc. No. 29

at 4) ("Offenders who are required to be supervised in the community by order under s. 753.1 of the

*Criminal Code* must be supervised in accordance with the *CCRA* [Corrections and Conditional Release

Act] upon completion of their sentence.  Long-term supervision does not form part of the offender's sentence.") (emphasis added); Criminal Code of Canada s. 753.2(1) ("[A]n offender who is subject to long-term supervision shall be supervised in the community in accordance with the Corrections and Conditional Release Act when the offender has finished serving [his sentence of sentences].") (emphasis added); Corrections and Conditional Release Act of Canada § 99 (providing for "day parole," "full parole" and "statutory release" as types of supervised release which may apply prior to the expiration of an offender's sentence in contrast with long term supervision under a LTSO, which occurs after a sentence is completed).

Under normal circumstances where extradition is requested with respect to an offender so that he may be returned to serve the remainder of his sentence, the question of what constitutes the sentence imposed by the requesting country would presumably be a relatively straightforward one. Unfortunately, this is not such a case.

As noted, under Article 9(4) of the applicable Treaty, where extradition is sought in relation to a person already convicted, the request must be accompanied by the judgment of conviction and sentence imposed and a statement showing how much of the sentence has not been served.[13]  The government contends that the evidence presented in connection with the extradition hearing in this case satisfies that burden.   The government points to the language employed by the sentencing judge and the appellate court in Robertson's case, the statutory scheme and the affidavit of the Canadian prosecutor as all supporting its position that the ten-year term of long term supervision under the LTSO from which Robertson absconded was in fact part of the sentence imposed in his criminal case.[14]  Robertson's

---

[13]   That provision also requires evidence proving that the person requested is the person to whom the warrant of arrest refers.  27 UST 983, TIAS 8237 (Government Ex. 1 (Doc. No. 40), at Article 9(4)). However, here Robertson's identity as the convicted person sought by Canada is not disputed.

[14]   At the further extradition hearing on December 16, 2011, the Assistant U.S. Attorney acting in these proceedings on behalf of Canada, made clear that it was the position of the requesting country that their submission was an adequate basis upon which to extradite Robertson to serve the remainder of the LTSO term imposed at the time of sentencing in his case and that any further inquiry into Canadian law with respect to the scope of a criminal sentence imposed in that country was appropriately conducted only by the courts of Canada.  This court does not disagree with the principle underlying that position

1 counsel counters with a persuasive argument, based upon the holdings of the Supreme Court of Canada,

2 other Canadian courts and statutory provisions, that the law of Canada establishes a subtle but critically

3 important distinction between the sentence imposed upon an offender (which includes various types of

4 parole and supervised release) and long term supervision under a LTSO which occurs only after one's

5 sentence has been fully satisfied and is separate and distinct from the sentence itself.

6 As should by now be clear, the court finds this question to be a close one.  The

7 government has presented evidence of a judgment of conviction which, on its face, includes reference to

8 the ten-year long term supervision following his release imposed in Robertson's case at the time of

9 sentencing.  (Government Ex. 2 (Doc. No. 34), Ex. F at 28 and Ex. G (Doc. No. 35) at 1.)  The

10 government has also established that when Robertson departed Canada without permission, he had

11 approximately nine years, nine months and eighteen days remaining to serve under the LTSO.

12 (Government Exs. 1 and 2 (Doc. Nos. 34, 35 & 40).)  In fact, that point would appear to be undisputed

13 by the parties as well.  Accordingly, the government has facially met the requirements of the applicable

14 Treaty in seeking Robertson's extradition on this ground.

15 The court has carefully considered Robertson's contention that under the law of Canada

16 there is a subtle, but critically important, distinction to made between his criminal sentence and the

17 separate LTSO under which he was to be supervised following the completion of his sentence.  As noted

18 above, the argument is a serious one based upon the Canadian authorities brought to the court's attention

19 by his counsel.  However, the court is also mindful of the principle in international extradition law that

20 the courts of the United States "cannot become enmeshed in the technicalities of foreign criminal

21 processes[.]"  Borodin v. Ashcroft, 136 F. Supp.2d 125, 130 (E.D.N.Y. 2001) (citing United States ex

22 rel. Petrushansky v. Marasco, 325 F.2d 562, 565 (2d Cir. 1963) ("This provision of Mexican internal law

23 is of course primarily for the courts of that country to interpret; our duty would seem limited to ensuring

24 that the applicable provisions of the treaty and the governing American statutes are complied with.");

25 _____

26 but only pauses to note that it is a closer question whether this issue involves the interpretation and
application of the governing Treaty, which must be resolved in these proceedings, or is a matter solely of
Canadian law upon which this court should defer.

Emami, 834 F.2d at 1449 ("'We refrain from interpreting the requirements of German criminal procedure both out of respect for German sovereignty and because we recognize the chance of erroneous interpretation is much greater when we try to construe the law of a country whose legal system is not based on common law principles.") The Second Circuit Court of Appeals has recently commented on this principle, stating as follows:

> The narrow scope of review in extradition proceedings and the mandate that treaty obligations be liberally construed are based on "[t]he interests of international comity." Ahmad, 910 F.2d at 1067. Accordingly, it has long been recognized that an extradition judge should avoid making determinations regarding foreign law. See Jhirad, 536 F.2d at 484–85 ("It is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity upon which extradition is based."); see also Grin v. Shine, 187 U.S. 181, 190, 23 S. Ct. 98, 47 L.Ed. 130 (1902); In re Assarsson, 635 F.2d 1237, 1244 (7th Cir.1980)

> In addition to principles of international comity, the reluctance of our courts to fastidiously examine foreign law in extradition proceedings is founded in principles of judicial modesty. See In re Assarsson, 635 F.2d at 1244 ("The possibility of error warns us to be even more cautious of expanding judicial power over extradition matters."). Such modesty is well placed in the extradition context, which "is not the occasion for an adjudication of guilt or innocence," Melia, 667 F.2d at 302. Any arguments regarding the demanding country's compliance with its own laws, therefore, are properly reserved for the courts of that country. See Fernandez v. Phillips, 268 U.S. 311, 312, 45 S. Ct. 541, 69 L.Ed. 970 (1925) ("[I]t has been presented as if this were the final stage and every technical detail were to be proved beyond a reasonable doubt. This is not the law.").

> For all of these reasons, U.S. courts are strongly discouraged from reviewing whether the demanding country has complied with its own law and, indeed, it is error to do so except to the limited extent necessary to ensure compliance with the applicable extradition treaty. See United States ex rel. Petrushansky v. Marasco, 325 F.2d 562, 565 (2d Cir.1963) (Thurgood Marshall, J.) (role of a U.S. court is "limited to ensuring that the applicable provisions of the treaty and the governing American statutes are complied with."); see also Sacirbey, 589 F.3d at 65 (observing that courts should "give[ ] meaning to treaty language . . . while avoiding unwarranted incursions into the details of foreign criminal procedure."). Technical objections to the demanding nation's compliance with its own law are particularly disfavored. As the Supreme Court has cautioned, in the extradition context, "[f]orm is not to be insisted upon beyond the requirements of safety and justice." Fernandez, 268 U.S. at 312, 45 S. Ct. 541; see also Grin, 187 U.S. at 184–85, 23 S. Ct. 98 ("[W]here the

1    proceeding is manifestly taken in good faith, a technical noncompliance
     with some formality of criminal procedure should not be allowed to stand
2    in the way of a faithful discharge of our obligations.").

3         Nothing in our opinion in <u>Sacirbey</u> should be read to invite judges
     to freely examine whether the demanding country has complied with its
4    own laws.  Properly construed, <u>Sacirbey</u> is not inconsistent with the long-
     standing principle that we now reaffirm:  Judicial officers considering
5    extradition requests - and, by extension, district judges considering habeas
     petitions challenging extradition orders - should not engage in an analysis
6    of the demanding country's laws and procedure, except to the limited
     extent necessary to ensure that the requirements of the federal extradition
7    statute and the applicable extradition treaty have been satisfied.

8  <u>Skaftouros v. United States</u>, 667 F.3d 144, 156 (2d Cir. 2011).  <u>See also</u> <u>Milia v. United States</u>, 667 F.2d

9  300, 303 (2d Cir. 1981) (Rejecting the argument of the subject of an extradition request that under its

10 own law Canada had no jurisdiction over him for the charged offense, noting "[w]e are . . . not expected

11 to become experts in the laws of foreign nations."); <u>Caltaqirone v. Grant</u>, 629 F.2d 739, 744 (2d Cir.

12 1980) (The applicable extradition treaty did "not contemplate a review of the validity, under Italian law,

13 of the Italian arrest warrant.")

14      For this court to make the legal determination that under the laws of Canada the LTSO

15 imposed on Robertson at the time of his sentencing by the trial judge was, in fact, not part of his

16 sentence would run afoul of these principles.  Here, the Government of Canada has submitted a

17 diplomatic note formally requesting the extradition of Robertson, specifically representing that he "is to

18 serve the remainder of a sentence (9 years 9 months 18 days for a long term supervision order) imposed

19 on January 20, 2005" in connection with the child molestation charges upon which he was convicted in

20 that country.  (Government Ex. 1 (Doc. No. 40) at 4.)  The government has presented evidence of a

21 judgment of conviction which, on its face, includes the imposition of the ten-year long term supervision

22 imposed at the time of Robertson's sentencing.  (Government Ex. 2, Ex. F (Doc. No. 34) at 28 and Ex. G

23 (Doc. No. 35) at 1.)  Again, it is undisputed that Robertson is the individual sought to complete service

24 of that sentence.  Based on this evidence, the court finds that extradition is called for under Article 9(4)

25 of the governing treaty.  Despite the arguable points raised by counsel for Robertson, this court declines

26 to make a determination regarding the law of Canada, with respect to what forms of supervision are

1   included in a criminal sentence under the laws of that country that is at odds with the representations of

2   the government requesting extradition.  See Skaftouros, 667 F.3d at 156 (and cases cited therein).

3          B.     Are the Three New Charges Brought Against Robertson In Canada For Breaching the
                Term of the LTSO in Violation of CCC § 753.3(1) Extraditable Offenses Under the Dual

4                   Criminality Provision of the Treaty?

5          The determination made above, however, does not end the analysis of the request for

6   extradition pending before this court.  This is because, as is undisputed by the parties here, the applicable

7   treaty provides that,

8             [a] person extradited under the present Treaty shall not be detained, tried
          or punished in the territory of the requesting State for an offense other than

9             that for which extradition has been granted . . . .

10  Treaty (Government Ex. 1 (Doc. No 40)), Article 12(1).  See also United States v. Rauscher, 119 U.S.

11  407, 412, 430 (1886); United States v. Iribe, 564 F.3d 1155, 1158 (9th Cir. 2009) ("'The doctrine of

12  specialty prohibits the requesting nation from prosecuting the extradited individual for any offense other

13  than that for which the surrendering state agreed to extradite.'"); Caplan v. Vokes, 649 F.2d 1336, 1343

14  (9th Cir. 1981) ("Under [the principle of specialty], the inquiry does not end merely because the accused

15  is found extraditable on one charge.  A determination must be made as to whether each specific charge

16  forms the basis for extradition, as the defendant may be prosecuted only on extraditable charges.");

17  Cucuzzella v. Keliikoa, 638 F.2d 105, 107 (9th Cir. 1981) ("Because the treaty [between the United

18  States and Canada] prohibits punishment for an 'offense' other than that for which a person is extradited

19  and because two offenses have been alleged as to each act, we must look to the extraditability of each

20  offense and not just each act."); United States v. Garrido-Santana, 360 F.3d 565, 577 (6th Cir.) ("The

21  principle of specialty 'requires that the requesting country not prosecute for crimes . . . for which an

22  extradition was not granted.'"), cert. denied 542 U.S. 945 (2004).

23         Here, as noted at the outset, the requesting country also seeks Robertson's extradition to

24  face three new charges that he failed to comply with the terms of his LTSO in violation of Criminal

25  Code of Canada s. 753.3(1).  Specifically, on September 23, 2010, Robertson was indicted in the

26  Province of British Columbia with failing or refusing to comply with his LTSO by:  Count 1 - failing to

remain at all times in Canada within the territorial boundaries fixed by his parole supervisor; Count 2 -

failing to advise his parole supervisor of any change in his address of residence; and Count 3 - failing to

report to his parole supervisor immediately and thereafter as instructed by his parole supervisor.

(Government Ex. 2 (Doc. No. 34), Ex. A.)

       The government contends that the three new charges brought against Robertson for

violating CCC § 753.3(1) are extraditable offenses and that the dual criminality requirement[15] is satisfied

with respect to those charges because, if the underlying conduct was committed in the United States, it

could be prosecuted as criminal contempt of court in violation of 18 U.S.C. § 401(3) or as a failure to

abide by the registration requirements of the Sex Offender Registration and Notification Act

("SORNA"), 42 U.S.C. § 16901, et seq.[16]  Counsel on behalf of Robertson contest both grounds for

extradition advanced by the government on the three new charges, arguing that the conduct with which

Robertson is charged in Canada is not chargeable under the laws of the United States and punishable by

more than one year imprisonment.  Rather, Robertson contends, the conduct with which he is charged in

Canada would be sanctionable in this country only through a supervised release violation proceeding

which the government has conceded does not satisfy the dual criminality provision of the treaty.  Below,

---

[15] "Extradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment."  Treaty (Govt. Exhibit 1 (Doc. No. 40) at sequential p. 11), Article 2 (emphasis added).

[16] The government originally argued that dual criminality was satisfied in part because, if the conduct underlying the three new charges in Canada had been committed in the United States, it would be subject to prosecution under 18 U.S.C. § 3583.  (Doc. No. 17 at 9.)  However, when counsel for Robertson pointed out that § 3583(e) provided only for the revocation of a previously imposed term of supervised release and does not create a new offense punishable by imprisonment exceeding one year, the government abandoned its argument that the statute provided a basis for satisfying the dual criminality requirement.  The government's concession on this point is well-taken.  See United States v. Woodard, 675 F.3d 1147, 1151-52 (8th Cir. 2012) ("[T]here is no support for the proposition that a supervised release violation is [an 'offense.']") (quoting United States v. Smith, 500 F.3d 27, 31 (1st Cir.2007).  Moreover, "the violation of a supervised release condition is not a violation of an 'Act of Congress.'"  Smith, 500 F.3d at 32.  In addition, although the requesting country has provided evidence that Robertson is charged in Canada with failing to register as a sex offender following his departure from Canada, they also acknowledge that such failure to maintain his registration is not an extraditable offense under the applicable Treaty and are not seeking his extradition to face that charge.  (Government Ex. 2 (Doc. No. 34), Ex. A at ¶22; Sept. 4, 2012 Aff. of Prosecutor Murray at ¶5; (Doc. No. 22 at 11, n.1)).

1   the court will consider each of the government's proffered theories for extradition with respect to the

2   new LTSO violation charges.

3                          1.   Contempt of Court Under 18 U.S.C. § 401(3)

4              The government first argues that in violating the conditions of his long term supervision,

5   Robertson disobeyed the lawful order of the Supreme Court of British Columbia and that such conduct,

6   if committed in the United States, would constitute contempt of court, a criminal offense that could

7   be prosecuted under 18 U.S.C. § 401(3) and possibly punishable by in excess of one year

8   imprisonment.[17]  Accordingly, the government argues that the dual criminality requirement is satisfied

9   with respect to the three new charges for breach of the LTSO upon which Canada seeks Robertson's

10  extradition.   In support of this contention, the government points to the decision in United States v.

11  Broussard, 611 F.3d 1069, 1070-73 (9th Cir. 2010), noting that there the underlying facts involved a

12  defendant who had been charged and sentenced for contempt after he escaped from a halfway house

13  commitment that had been imposed as a condition of his second round (out of three) of federal

14  supervised release.  However, the government concedes that the only issue presented on appeal in

15  Broussard was whether the defendant could be sentenced to two years imprisonment on his subsequent

16  violation of his third term of supervised release and not whether his earlier prosecution for contempt on

17  the escape/supervised release violation was appropriate.  (Doc. No. 22 at 7; see also Broussard, 611 F.3d

18  1070 ("We consider how convictions for contempt of court are classified for sentencing purposes in the

19  wake of United States v. Booker [.]")  The only other support offered on this point is the government's

20  citation to authority for the proposition that such a prosecution under § 401 is specifically authorized for

21  one who violates the conditions of his pretrial release under 18 U.S.C. § 3148.  (Doc. No. 22 at 8.)

22             In response, counsel for Robertson argues that the conduct with which Robertson is

23  charged in Canada could not serve as the basis for a prosecution for contempt of court under 18 U.S.C. §

24  _____

25        [17]  No maximum penalty is specified for criminal contempt under 18 U.S.C. § 401(3).  Frank v.
    United States, 395 U.S. 147, 150 (1969).  Thus, criminal contempts "have no statutory maximum
    sentence short of life imprisonment or death."  United States v. Carpenter, 91 F.3d 1282, 1284 (9th Cir.

26  1996), implied overruling on other grounds recognized by United States v. Broussard, 611 F.3d 1069,
    1072-73 (9th Cir. 2010).

401(3).  Counsel points out that the supervised release statute, 18 U.S.C. § 3583 was amended in 1988 to

eliminate the provision authorizing the prosecution of supervised release violations as contempt and that

the only court to consider the issue has concluded that a prosecution for contempt is not authorized for

violating a condition of supervised release.  (Doc. No. 25) (citing United States v. Bronson, No. 05-CR-

714 (NGG), 2007 WL 2455138 (E.D. N.Y. Aug. 23, 2007)).  In addition to the fact that the underlying

conduct cannot be prosecuted in this country as contempt, Robertson contends that, in any event, he is

not charged with violating a court order but rather with violating conditions set by the National Parole

Board of Canada, an administrative agency.  (Doc. No. 25) (citing Government Ex. 2 (Doc. Nos. 34 &

35), Ex. A (Indictment charging Robertson with violating specific conditions set by Correctional

Service, not the court), Ex. C (warrant issued March 31, 2010 by Correctional Service of Canada, not the

court), and Ex. I (Long Term Supervision Certificate setting conditions he is charged with violating

issued by Correctional Service, not the court)).  Robertson therefore argues that he could not be

prosecuted for contempt of court in the United States for failing to abide by the order of an

administrative agency and that because that is the conduct with which he is charged in Canada, the dual

criminality prohibits his extradition on this basis.  The court finds Robertson's argument in this regard to

be both compelling and persuasive.

           18 U.S.C. § 401(3) provides that:

           A court of the United States shall have power to punish by fine or
           imprisonment, or both, at its discretion, such contempt of its authority, and
           none other, as–

                 (3) Disobedience or resistance to its lawful writ, process,
                 order, rule, decree, or command.

Conduct that violates 18 U.S.C. § 401 is a federal crime, and generally contemnors are convicted

through normal criminal process.  F.T.C. v. Trudeau, 606 F.3d 382, 385 (7th Cir. 2010).  Criminal

contempt under the laws of the United States "is established when there is a clear and definite order of

the court, the contemnor knows of the order, and the contemnor willfully disobeys that order.  United

States v. Ryland, 714 F.2d 996, 1001 (9th Cir. 1983).  In contrast, supervised release may be imposed by

1  a federal court "as a part of the sentence[.]"  18 U.S.C. § 3583(a).  Thus, it is not apparent that a

2  violation of a condition of supervised release may be prosecuted as contempt of court in violation of §

3  401, as opposed to the normal course of action in our federal criminal justice system which, of course, is

4  a proceeding to revoke the term of supervised release which is governed by a lesser standard of proof.

5  See Johnson v. United States, 529 U.S. 694, 700 (2000) ("Although [supervised release] violations often

6  lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge

7  under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt."); see also

8  United States v. Burke, ___F.3d___,___, 2012 WL 4015774, at *2-3 (9th Cir. Sept. 13, 2012) (holding

9  that one who absconds from a residential reentry center where he was residing as a condition of his

10 supervised release was not in custody and could not be prosecuted for escaping from custody in violation

11 of 18 U.S.C. § 751(a) because his failure to return was a violation of his release conditions punishable by

12 revocation of his supervised release).

13        The case of United States v. Bronson, relied upon by Robertson, is instructive on this

14 point.  There, the defendant was charged with a number of offenses including two counts of contempt for

15 aiding and abetting an individual who was on supervised release to violate the terms of that release.

16 2007 WL 2455138, at *1.  The defendant moved to dismiss both contempt charges on the grounds that

17 they failed to charge a cognizable offense and the district court granted that motion.  Id.  In so ruling the

18 court stated:

19        [T]he Superseding Indictment fails to allege that Bronson aided and
          abetted his client's contempt of court because the Government has not
20        alleged that Bronson's client committed contempt of court.  18 U.S.C.  §
          3583, which sets forth the sanctions a court may impose if a defendant
21        violates a condition of a supervised release, does not authorize the
          Government to prosecute a person with contempt for violating a
22        supervised release.  Crucially, when it was originally enacted in 1984,
          § 3583 did indeed authorize a court to punish a violation of supervised
23        release as contempt of court under 18 U.S.C. § 401(3).  See Gozlon-Perez
          v. United States, 498 U.S. 395, 401, 111 S. Ct. 840, 112 L.Ed.2d 919
24        (1991).  However, § 3583 was amended in 1988 to eliminate the specific
          provision authorizing contempt of court as a sanction for violating
25        supervised release.  See 134 Cong. Rec. H11108-01 § 7108 available at
          1988 WL 182261 (explaining that 102 Stat. 4181 § 7108(b)(2) "amends 18
26        U.S.C. § 3583(e) by striking out paragraph (3), which provides that the

court can treat a violation of a condition of a supervised release as a contempt of court under 18 U.S.C. § 401(3)").

When Congress amends a statute, the court interpreting the statute must assume that Congress intended for "its amendment to have a real and substantial effect." Stone v. INS, 514 U.S. 386, 397, 115 S. Ct. 1537, 131 L.Ed.2d 465 (1995); see also United States v. NEC Corp., 931 F.2d 1493, 1502 (11th Cir. 1991) ("[W]hen the legislature deletes certain language as it amends a statute, it generally indicates a[n] intent to change the meaning of the statute."); Muscogee (Creek) Nation v. Hodel, 851 F.2d 1439, 1444 (D.C. Cir. 1988) ("Where the words of a later statute differ from those of a previous one on the same or related subject, the Congress must have intended them to have a different meaning."). There is no reasonable explanation for why Congress would eliminate the specific paragraph authorizing contempt of court as a sanction for violating supervised release, unless it intended to prohibit such a sanction.

The Government argues that it is not charging Bronson under § 3583, but rather for aiding and abetting a violation of § 401(3) by assisting his client in disobeying "a lawful writ, process, order, rule, decree, or command of a court of the United States." 18 U.S.C. § 401(3).  However, the Supreme Court has held that "[a] specific provision controls over one of more general application." Gozlon-Perez, 498 U.S. at 407. "When two statutes are in conflict, the statute which addresses the matter at issue in specific terms controls over a statute which addresses the issue in general terms, unless Congress has manifested a contrary aim." Greene v. United States, 79 F.3d 1348, 1355 (2d Cir.1996).

In this case, § 401(3) and § 3583 are in conflict.  Whereas § 401(3) appears to authorize contempt as a sanction for violation of a supervised release, the 1988 amendment to § 3583 strongly indicates the intent of Congress to eliminate such a sanction.  The fact that the original language of § 3583 contained a specific reference to § 401(3), see 134 Cong. Rec. H11108-01 § 7108 available at 1988 WL 182261, and that Congress consciously deleted that language in eliminating the contempt sanction, demonstrates even more conclusively that Congress was considering contempt sanctions under § 401(3) when it amended the statute.  To argue that the 1988 Congress would have permitted a contempt charge under § 401(3) for violation of a condition of supervised release-even if this condition is also a "writ, process, order, rule, decree, or command of a court of the United States" - defies its clearly expressed intention in amending the statute.  Moreover, the parties have not identified and the court has not been able to identify anything in the legislative history of the 1988 amendments that suggests any other conclusion.

Thus, the two statutes are in conflict.  And since § 3583 sets forth a comprehensive scheme that specifically addresses violations of supervised release, § 3583 controls over § 401, which contains terms applicable to "lawful writ[s], process[es], order[s], rule[s], decree[s], or command[s]" in

/////

24

general.  18 U.S.C. § 401(3).  Because § 3583 does not authorize contempt
of court as a sanction for violation of a condition of supervised release,
Bronson's client could not be charged with contempt for such a violation.

Bronson, 2007 WL 2455138, at *5-6.  See also United States v. Hernandez-Servera, No. 10-50461, 458

Fed. Appx. 674, at *1 (9th Cir. Nov. 16, 2011) (rejecting a constitutional challenge to the supervised

release statute, 18 U.S.C. § 3583, which was based on the claim that supervised release revocation and

contempt were essentially the same, on the grounds that the two are not the equivalent of one another).[18]

The government's reliance on the Ninth Circuit's decision in Broussard in arguing that

dual criminality is satisfied because Robertson's conduct could be prosecuted as contempt in this country

is misplaced.  In reviewing the complicated factual background of that case, the Ninth Circuit merely

mentioned that while on his second round of supervised release the defendant attempted to escape from a

halfway house and "eventually pleaded guilty to assaulting a federal officer and contempt of court for

violating supervised release."  611 F.3d at 1070.  The actual issue before the court in Broussard was

"how convictions for contempt of court are classified for sentencing purposes in the wake of United

States v. Booker" - not whether a violation of the terms of supervised release may be prosecuted as

contempt of court under 18 U.S.C. § 401.  Id.  Of course, a court's decision cannot stand as authority

with respect to  an issue that was not raised and therefore not decided by the court.  See Rose v.

Mitchell, 443 U.S. 545, 582 (1979) ("[T]he propriety of the use of habeas corpus to assert the claim was

not raised, and hence was not decided.") (concurring opinion); Webster v. Fall, 266 U.S. 507, 511 (1925)

("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon,

are not to be considered as having been so decided as to constitute precedents."); Sinotes-Cruz v.

Gonzalez, 468 F.3d 1190, 1203 (9th Cir. 2006) ("Because the retroactivity issue . . . was not presented

for review, was not given reasoned consideration, and was unnecessary for the decision, it is not binding

precedent."); Thomas v. Texas Dep't of Crim Justice, 297 F.3d 361, 370 n. 11 (5th Cir. 2002) (an

opinion is not binding precedent for questions not squarely before the court).  The decision in Broussard

is therefore simply irrelevant to resolution of the dual criminality issue before this court.

---

[18]  Citation to this unpublished opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1       The government also relies upon the decision in <u>Cohen v. Benov</u>, 374 F. Supp. 2d 850

2   (C.D. Cal. 2005) in support of its contention that dual criminality is satisfied here because the underlying

3   conduct could be prosecuted as contempt in this country.  The argument is unpersuasive.  In <u>Cohen</u> the

4   petitioner challenged his extradition from the United States to Canada to face the charge of breach of

5   recognizance brought under CCC s. 145(3).  He did so on the ground that there was no felony

6   counterpart to that charge in this country.  374 F. Supp.2d at 859.  The district court rejected the

7   petitioner's argument in <u>Cohen</u> because 18 U.S.C. § 3148 (a) and (c) specifically authorize a contempt

8   prosecution under § 401 for one who, after being released pretrial pursuant to 18 U.S.C. § 3142, violates

9   a condition of their pretrial release.  374 F. Supp. 2d at 859.  Of course, as discussed above, the opposite

10  is true with respect to a violation of the terms of supervised release under 18 U.S.C. § 3583 which is the

11  provision most clearly analogous to the new charges upon which Robertson's extradition is sought.  <u>See</u>

12  <u>Bronson</u>, 2007 WL 2455138, at *5-6.  Thus, the decision in <u>Cohen</u> would, if anything, support the

13  conclusion that dual criminality cannot be satisfied here by analogy to contempt of court.

14      Finally, even if one could theoretically be charged with contempt in the United States for

15  violating a condition of supervised release imposed under 18 U.S.C. § 3583, the contempt statute fails to

16  provide an analogy that satisfies dual criminality in this case because Robertson is not charged in Canada

17  with violating a court order as required under 18 U.S.C. § 401.  Rather, as his counsel points out,

18  Roberston is charged specifically with leaving the territorial boundaries fixed by his parole supervisor,

19  failing to advise his parole supervisor of any change in residence and failing to report to his parole

20  supervisor as instructed.  (Government Ex. 2 (Doc. No. 34), Ex. A.)  None of these terms were set by

21  Justice Kirkpatrick at the time of Robertson's sentencing on January 20, 2005.  (<u>See</u> Government Ex. 2

22  (Doc. Nos. 34 & 35), Exs. F & G.)  Rather, those conditions were not imposed until Canadian parole

23  authorities set them at the time of Robertson's release on January 19, 2010.  (Government Ex. 2 (Doc.

24  No. 35), Ex. I.)  The government has advanced no argument that one could be prosecuted for contempt

25  of court in the United States for failing to abide by the directive of a supervising probation officer where

26  the directive was not included in an order of the court.

1    For all of these reasons the court rejects the government's analogy between the new

2    charges brought against Robertson in Canada and the offense of contempt of court under 18 U.S.C.

3    § 401 as providing a basis for finding that the dual criminality requirement has been satisfied.

4    2.  Failure to Comply With the Registration Requirements of the Sex Offender
     Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901, et seq.

5

6    Alternatively, the government argues that dual criminality could be found satisfied here

7    because Robertson's failure to abide by the conditions of his long term supervision in Canada is

8    analogous to violating the registration requirements of SORNA, a felony offense in the United States.

9    See 18 U.S.C. § 2250(a) ("Whoever - is required to register under [SORNA] and knowingly fails to

10   register or update a registration as required by [SORNA]; shall be fined under this title or imprisoned not

11   more than 10 years, or both.")  The government essentially argues that because long term supervision for

12   those designated as dangerous offenders in Canada and SORNA's registration requirements for

13   convicted sex offenders in the United States are both generally intended to serve important public safety

14   purposes, dual criminality is satisfied.  The court finds this argument wholly unpersuasive.[19]

15   As noted above, Robertson has specifically been charged with failure to maintain his sex

16   offender registration in Canada but the requesting country has conceded that he cannot be extradited on

17   that charge under the applicable Treaty because it is an offense punishable by only up to six months

18   imprisonment.  Under those circumstances, it would be odd indeed to conclude that Robertson could be

19   extradited to Canada to face charges of violating the terms of his long term supervision because those

20   charges are analogous to a failure to register as a sex offender.  Moreover, Robertson is charged with

21   very specific violations of his long term supervision in Canada, none of which have anything to do with

22   registration as a sex offender which is the subject of 18 U.S.C. § 2250(a).  It is certainly true that dual

23   criminality "does not require that the name by which the crime is described in the two countries shall be

24   the same."  Collins, 259 U.S. at 312.  See also Manta, 518 F.3d at 1141 (that the criminal statutes in both

25

26       [19]  Not surprisingly, at the December 16, 2012 further extradition hearing, counsel for the
     government candidly conceded that this was not the strongest argument for extradition before the court.

1  countries are "substantially analogous" suffices).  However, dual criminality  does require that the

2  conduct charged constitute a crime in both jurisdictions.  Clarey, 138 F.3d at 766; Oen Yin-Choy, 858

3  F.2d at 1404; Emami, 834 F.2d at 1450; see also Treaty (Government Ex. 1 (Doc. No. 40) at sequential

4  p. 11), Article 2 ("Extradition shall be granted for conduct which constitutes an offense punishable by

5  the laws of both Contracting Parties . . . .")  Here, the conduct with which Robertson is charged in

6  Canada simply does not come anywhere near also violating SORNA's registration requirement under 18

7  U.S.C. § 2250(a).[20]

8          Finally, the mere fact that the Canadian statute making violation of the conditions of long

9  term supervision a crime and SORNA's sex offender registration requirements are both aimed at

10  protecting public safety cannot be said to make them "substantially analogous."  Manta, 518 F.3d at

11  1141.  Nor does the fact that in a very broad sense both have public protection as a goal suffice as a basis

12  upon which to conclude that they make the same conduct criminal in satisfaction of the dual criminality

13  requirement.  See Shapiro, 478 F.2d at 910-11, 913 (finding that charges of forgery, use of a forged

14  document and giving false information under Israeli law had no adequate counterpart under the laws of

15  this country thereby precluding extradition on those charges); Freedman v. United States, 437 F. Supp.

16  1252, 1262 (N.D. Ga. 1977) (concluding that the charge of secret commercial bribery in violation

17  Criminal Code of Canada s. 383 had no sufficiently close counterpart in this country and that extradition

18  on that charge was "precluded by the lack of comparability"); see also United States v. Khan, 993 F.2d

19  1368, 1372-73 (9th Cir. 1993) (rejecting the government's argument "that as long as the underlying

20  conduct is criminal, dual criminality is satisfied" and holding that because there appeared to be no

21

22      [20]  In fact, the long term supervision that Robertson is charged in Canada with violating does not
even contain as a special or standard condition the requirement that he register as a sex offender.  (See
23  Government Ex. 2 (Doc. No. 35), Ex. I.)  Moreover, as his counsel points out, at the time the three new
charges were brought against Robertson in Canada on September 23, 2010 (Government Ex. 2 (Doc. No.
24  34), Ex. A) for violating the conditions of his long term supervision, he was properly registered as a sex
offender in Canada and could not have been charged with that offense conduct.  (See Doc. No. 25,
25  Robertson Ex. 1 (reflecting his annual registration with the National Sex Offender Registry in Canada on
January 28, 2010.))  For these reasons as well, the registration requirement under 18 U.S.C. § 2250(a)
26  cannot serve to satisfy the dual criminality requirement of the applicable Treaty with respect to the
request that Robertson be extradited on the three new charges brought against him in Canada.

Pakistani law analogous to 21 U.S.C. § 843 (unlawful use of a communications facility), dual criminality was not satisfied and the defendant could not prosecuted for that offense in this country following his extradition from Pakistan).

For all of these reasons the court rejects the government's analogy between the new charges brought against Robertson in Canada and the offense of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a), as providing a basis for finding that dual criminality has been satisfied.

The government has offered no other argument under state or federal law[21] upon which this court could find that the dual criminality requirement has been satisfied with respect to the request that Robertson be extradited to face the three charges of failing to comply with his long term supervision in violation of s. 753.3(1) of the Criminal Code of Canada.  (Government Ex. 2 (Doc. No. 34), Ex. A)  Accordingly, this court concludes that Article 2 of the Treaty precludes his extradition on those new charges and the request for extradition made on that basis must be denied.

**FINDINGS AND CERTIFICATION**

Based upon the evidence presented in these proceedings and the submissions of the parties, the court makes the following findings:

1.  This court has subject matter jurisdiction to conduct these extradition proceedings and is authorized to do so under 18 U.S.C. § 3184 and U.S. District Court for the Eastern District of California Local Rule 302(b)(8).

2.  This court has personal jurisdiction over James William Robertson who was found in and arrested in this judicial district.

3.  There is a valid extradition treaty in full effect between the United States of America and Canada.

4.  James William Robertson is the person named in the warrant for arrest issued by a Justice of the Peace for the Province of British Columbia on September 23, 2010.  (See Government Ex.

---

[21]  "We . . . look to proscription by similar criminal provisions of federal law or, if none, the law of the place where the fugitive is found or, if none, the law of the preponderance of the states." Cucuzzella v. Keliikoa, 638 F.2d 105, 107 (9th Cir. 1981).

29

1   2 (Doc. No. 34), Ex. B.)

2          5.  The required documents have been presented in accordance with the laws of the

3   United States of America and the applicable Treaty, and have been duly authenticated by the United

4   States of America.

5          6.  It has been established that Robertson was convicted in the British Columbia Supreme

6   Court of multiple offenses and sentenced on January 20, 2005 to sixteen years imprisonment with credit

7   for time served of eleven years plus the maximum ten year period of Long Term Supervision thereafter.

8   It has also been established that Robertson had nine years, nine months, and eighteen days remaining

9   under the Long Term Supervision imposed at the time of sentencing when he departed Canada for this

10  country.  (See Government Ex. 1 (Doc. No. 40) at consecutive page 5.)  Accordingly, his extradition is

11  authorized under Articles 1 and 9(4) of the Treaty as one convicted in the courts of the requesting

12  country with a portion of his sentence with respect to that conviction that has not been served.

13  Robertson's extradition to Canada is therefore certified to complete service of the sentence imposed on

14  January 20, 2005, in the British Columbia Supreme Court.

15         7.  However, the request that Robertson be extradited to stand trial on an Indictment filed

16  September 23, 2010 charging three counts of breach of a long term supervision order in violation of

17  Section 753.3(1) of the Criminal Code of Canada must be rejected as prohibited by Article 2 of the

18  Treaty.  Specifically, the dual criminality requirement has not been satisfied with respect to this basis for

19  the requested extradition and certification on this ground will therefore be denied.

20         The Court hereby certifies the above findings as well as the transcripts of the extradition

21  hearing held in this case to the Secretary of State pursuant to 18 U.S.C. § 3184.

22                                    **CONCLUSION**

23         For the reasons set forth above, IT IS HEREBY ORDERED that:

24         1.  James William Robertson is committed to the custody of the United States Marshal

25  pursuant to 18 U.S.C. § 3184 and shall remain in custody until he is surrendered to Canada to complete

26  /////

the service of the long term supervision order imposed upon him in at his sentencing on January 20, 2005, or until further order of the Secretary of State;

        2.   The Clerk of the Court is directed to deliver a certified copy of this Certification of Extraditability to the Assistant United States Attorney assigned to this action for transmission to the Secretary of State; and

        3.   This order is stayed for fourteen days from the date of the order, or until further order of this court whichever is earlier, to provide the government sufficient time, on behalf of Canada, to seek reconsideration thereof and/or to provide counsel for Robertson sufficient time to seek a writ of habeas corpus.[22]

DATED: October 19, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD1:crim
Robertson.extra

---

[22]   Although a determination by a Magistrate Judge that an individual "is extraditable is not subject to direct appeal, it is subject to collateral review by way of habeas corpus." Man-Seok Choe v. Torres, 525 F.3d 733, 736 n. 2 (9th Cir. 2008) (citing Oen Yin-Choy v. Robinson, 858 F.2d 1400, 1402 (9th Cir. 1988)), cert. denied 555 U.S. 1139 (2009).